Kiran K. SHAH, Plaintiff-Appellant,

v.

GENERAL ELECTRIC COMPANY, Defendant-Appellee.

No. 86–5548.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1987.
Decided April 20, 1987.

James C. Hickey, argued, Ewen, Mac-Kenzie and Peden, Louisville, Ky., for plaintiff-appellant.

Edwin Hopson, Louisville, Ky.,for defendant-appellee.

Before MERRITT and MILBURN, Circuit Judges; and PECK, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiff Kiran K. Shah appeals the summary judgment for defendant General Electric Co. ("GE") in this action alleging that GE terminated plaintiffs employment because of his color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) ("Title VII"), and the Civil Rights Act of May 31, 1870, 42 U.S.C. § 1981 ("section 1981"). Plaintiff further alleged that GE discharged him without just cause and without following the policies and procedures set forth in the company's Organization and Policy Guide and thereby breached the employment contract between plaintiff and GE. For the reasons that follow, we affirm the dismissal of plaintiff's federal claims but reverse the grant of summary judgment on the breach of contract claim.

## I.

Plaintiff, a dark-skinned native of India, has been a citizen of the United States since 1975. He holds a bachelor's degree in Chemical Engineering from Bombay University in India, a Master's Degree in Chemical Engineering from Northwestern University in Evanston, Illinois, and an MBA in Marketing and Finance from the University of New Haven, Connecticut.

After a short tenure teaching Strategic Planning and Marketing in the graduate program at the University of New Haven, plaintiff was employed by Uniroyal from 1964 to 1979.

In February 1980, GE offered plaintiff the "relatively high position" of Manager of Business Development and Planning for the Air Conditioning Business Division ("ACBD") at GE's Appliance Park Facility in Louisville, Kentucky. This position was the second most important position in planning at ACBD, and plaintiff's starting salary of Sixty Thousand Dollars ($60,000.00) per annum was the highest amount paid any exempt employee not on Division Staff. Plaintiff was also eligible for GE's Incentive Compensation Plan.

On discovery, plaintiff testified that during the interview process, he was shown a GE Organization and Policy Guide and that he received a copy after he began his employment. The manual contained GE's policies on "Treatment of Less than Satisfactory Performance." Plaintiff further testified that he was told that GE did not terminate its employees "without a just and sufficient cause."

Plaintiff began his employment with GE on April 1, 1980, and worked without direct supervision until June 1980, when W.T. Hewitt became his supervisor. Hewitt's assessment of plaintiff "was quite complimentary with regard to his performance, and was quite positive with regard to his promotability." Mr. Palmer, Manager of Organization and Manpower for ACBD, further deposed that there was nothing negative in plaintiff's personnel file prior to his termination.

In July 1981, plaintiff's immediate supervisor resigned, and plaintiff was appointed acting manager. On August 26, 1981, William Sharpstone was named manager and plaintiff returned to the number two position. The district court observed that, "For whatever reason, relations between Sharpstone and plaintiff were less than cordial."

Plaintiff further testified on discovery that he met Sharpstone for the first time at the airport for a trip to Tyler, Texas. Plaintiff stated that Sharpstone refused to shake hands or to speak with him during the plane ride, and that in the succeeding months, Sharpstone would not respond to his memoranda or his verbal requests for conferences. Plaintiff testified that he felt Sharpstone was isolating him from the mainstream of the department's work, and further testified that Sharpstone consistently misspelled his name.

On discovery, Sharpstone testified that plaintiff's work was unsatisfactory. First, Sharpstone felt that a speech prepared by plaintiff was unfocused, disorganized, and without any conclusion. Second, Sharpstone testified that plaintiff failed to follow his directions in preparing a model for forecasting industry trends. Third, Sharpstone felt that plaintiff's analysis of one of GE's principal competitors was disorganized and not usable for action purposes. Fourth, in Sharpstone's view, plaintiff's comments during meetings were unfocused and "off the wall."

As a result of these perceived deficiencies in plaintiff's performance, Sharpstone denied plaintiff incentive compensation for 1981. Moreover, Sharpstone decided that plaintiff's employment should be terminated. Sharpstone further testified on discovery that he made this decision prior to plaintiff's departure on an extended trip to India in November 1981 for personal reasons. However, plaintiff was not informed until January 6, 1982, shortly after he returned to the United States. Plaintiff testified that at that time Sharpstone stated that plaintiff would be replaced. Sharpstone essentially confirmed that he expected at that time to replace plaintiff.

On January 18, 1982, plaintiff was formally notified of his termination. Although the separation date was set for the end of April 1982, GE extended the separation date to June 1982, and placed plaintiff on lack of work status in order to enable plaintiff to receive more benefits and additional severance pay.

At this same time, GE decided to reduce the ACBD staff and eliminated plaintiff's position. Accordingly, no one was ever hired to replace plaintiff. There is some

dispute as to whether, prior to the decision to eliminate plaintiff's position, GE interviewed individuals to replace plaintiff. GE officials deposed that there were no interviews. Plaintiff, on the other hand, testified that Sharpstone interviewed a Mr. Jaffee in the late summer of 1981, which would be approximately one year before plaintiff's termination. There is no indication in our record as to Mr. Jaffee's race.

After exhausting his administrative remedies, plaintiff filed the present action on July 1, 1983. Following discovery, GE moved for summary judgment on February 26, 1986, which the district court granted on April 14, 1986. The district court first rejected GE's argument that plaintiff's section 1981 claim was deficient because East Indians are not entitled to protection under the statute.

The district court next turned to an analysis of plaintiff's Title VII and section 1981 claims under the standards set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny.[1] The district court first held that although plaintiff's evidence established the first three elements of a prima facie case under *McDonnell Douglas; viz.*, (1) that plaintiff is a member of a protected class, (2) he was discharged, and (3) he was qualified for the position, plaintiff's evidence did not establish the fourth element; *i.e.*, that plaintiff was replaced by someone with his qualifications. The district court went on to hold that, assuming *arguendo* that plaintiff had established a prima facie case, GE had carried its burden of producing evidence that it terminated plaintiff for the legitimate, nondiscriminatory reason that his job performance was inadequate. However, the district court further held that plaintiff's evidence could not support a finding that the reason proffered by GE was pretextual.

The district court dismissed plaintiff's implied contract claim because, in its view, under Kentucky law, plaintiff's employment was terminable at will. Further, the district court declined to exercise pendant

jurisdiction over plaintiff's claim under Kentucky's Civil Rights Act, Ky.Rev.Stat. ch. 344 (1983).

On appeal plaintiff argues (1) that the district court erred in holding that he did not establish a prima facie case because he was not replaced; (2) that the district court erred in holding that the evidence could not support a finding that GE's proffered reason for discharging him was pretextual; and (3) that the district court erred in holding that, under Kentucky law, he was an employee at will. GE argues, as a partial, alternative ground for affirming the district court, that plaintiff, as an East Indian, is not entitled to protection under section 1981.

**II.**

**A. Prima Facie Case**

■ In a disparate treatment case, such as the present action, the plaintiff's ultimate burden is to persuade the court that he has been the victim of intentional discrimination. *See, e.g., Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 92 (6th Cir. 1982) (per curiam). In the absence of direct evidence, "[p]roof of discriminatory motive ... can in some situations be inferred from the mere fact of differences in treatment." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). *See also Rowe*, 690 F.2d at 92. In *McDonnell Douglas*, the Supreme Court established a tripartite analysis for disparate treatment claims: the plaintiff must prove a prima facie case; the defendant must offer a legitimate, nondiscriminatory reason for its actions; and the plaintiff must establish that the defendant's proffered explanation is a pretext to mask an illegal motive. 411 U.S. at 802–04, 93 S.Ct. at 1824–25.

The *McDonnell Douglas* Court stated that in a failure-to-hire case, the Title VII

---

[1]. The order and allocation of proof in a section 1981 case are the same as in a Title VII action. *See Daniels v. Board of Education*, 805 F.2d 203, 207 (6th Cir.1986).

plaintiff may establish a prima facie case of racial discrimination "by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications." *Id.* at 802, 93 S.Ct. at 1824. This test was recently reaffirmed in *Cooper v. Federal Reserve Bank,* 467 U.S. 867, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984). A slightly different test has been applied in the discharge setting:

> The three elements necessary to establish a prima facie case of discriminatory discharge were specifically enumerated by this court in *Potter v. Goodwill Industries,* 518 F.2d 864 (6th Cir.1975). A plaintiff must show "[1] that he is a member of a class entitled to the protection of the Civil Rights Act, [2] that he was discharged without valid cause, and [3] that the employer continued to solicit applications for the vacant position." *Id.* at 865. Failure to prove any one of these elements by a preponderance of the evidences mandates a dismissal of the plaintiff's suit. *Morvay v. Maghielse Tool & Die Co.,* 708 F.2d 229, 233 (6th Cir.), *cert. denied,* 464 U.S. 1011, 104 S.Ct. 534, 78 L.Ed.2d 715 (1983).

Case law subsequent to *McDonnell Douglas* has emphasized that the prima facie method "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). *See also United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). "The burden of establishing a prima facie case of disparate treatment is not oner-

ous." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094.

However articulated, the significance of the prima facie case is that it permits an "inference of discrimination ... because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949. Thus, "[t]he central inquiry in evaluating whether the plaintiff has met his initial burden is whether the circumstantial evidence presented is sufficient to create an inference [of discrimination]." B. Schlei and P. Grossman, *Employment Discrimination Law* 247 (Supp.1983–84).

The essence of a disparate treatment case is that "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Teamsters,* 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15. *See also Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949. *Rowe,* 690 F.2d at 92. Accordingly, "individual disparate treatment ... cases generally require indirect evidence from which an inference of discriminatory motive may be drawn, namely, comparative evidence demonstrating that the treatment of the plaintiff differs from that accorded to otherwise 'similarly situated' individuals who are not within the plaintiff's protected group." B. Schlei & P. Grossman, *supra,* at 1291 (2d ed. 1983).

A Title VII plaintiff supplies this indispensable comparative evidence at the prima facie stage through the last prong of the *McDonnell Douglas* test (as restated in *Morvay*) by identifying those individuals who are allegedly treated differently.[2] *See Hughes v. Chesapeake & Potomac Telephone Co.,* 583 F.Supp. 66, 69 (D.D.C.1983) ("Because no one replaced plaintiff when she was terminated, to make a *prima facie* case, plaintiff must show that non-minority employees with comparable records were not terminated."). This explains the *McDonnell Douglas* Court's articulation of

---

**2.** Establishment of this factor is also significant in that it eliminates one of the most likely legitimate causes for the employer's adverse action—the absence of a job opening. *See Team-*

*sters,* 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44. B. Schlei & P. Grossman, *supra,* at 1299 (2d ed. 1983).

this factor as requiring a showing "that, after his rejection, the position remained open and the employer continued to seek applicants *from persons of complainant's qualifications.*" 411 U.S. at 802, 93 S.Ct. at 1824 (emphasis supplied).

■ Proof that a Title VII plaintiff belongs to a racial minority, that he was qualified for his position, and that he was fired, without more, simply fails to present evidence that the plaintiff "was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094. *Cf. Teamsters,* 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44. ("An employer's isolated decision to reject an applicant who belongs to a racial minority does not show that the rejection was racially based."). We do not mean to suggest that a Title VII plaintiff seeking to prove disparate treatment must always present evidence establishing the last prong of the *McDonnell Douglas* prima facie test. *See Beaven v. Kentucky,* 783 F.2d 672, 676 (6th Cir.1986). We do note, however, that in cases where courts have found that a Title VII plaintiff presented a prima facie case without proof that the employer continued to solicit applications, some additional evidence tended to establish the inference of discrimination. In particular, the plaintiffs were able to point to other individuals who were more favorably treated.

For example, in *Beaven, supra,* we held that although plaintiff failed to show that his eliminated position was filled, the district court erred in failing "to consider Beaven's status as a merit employee and the possibility that defendants had offered Beaven's next position to a white employee." *Id.* at 675. Similar reasoning can be found in *Peters v. Jefferson Chemical Co.,* 516 F.2d 447, 450 (5th Cir.1975). Although the court declined in *Peters* to decide whether the plaintiff had established a prima facie case, it indicated that other factors "counterbalanced the fact that [the defendant] did not try to fill" plaintiff's former position. *Id.* The court observed that the decision not to fill the position came after the plaintiff's rejection and that

two other positions for which the plaintiff was qualified were filled subsequent to her termination. *Id.* Other cases have held that a plaintiff who was not replaced can nonetheless establish a prima facie case by showing that the defendant engaged in a pattern of racial discrimination which supports an inference that any particular employment decision, during the period the discriminatory policy was in force, was made pursuant to that policy. See, *e.g., Wooten v. New York Telephone Co.,* 485 F.Supp. 748, 758–60 (S.D.N.Y.1980) (quoting *Teamsters,* 431 U.S. at 362, 97 S.Ct. at 1868.)

This case differs from *Tye v. Board of Education of the Polaris Joint Vocational School District,* 811 F.2d 315 (6th Cir. 1987). *Tye* was a reduction in force case where the task previously performed by the Title VII plaintiff was still being performed by someone. Precisely, that case involved the elimination of one of two guidance counselors. The school continued to have a counselor for each of its students but had less individuals performing that task. Thus, the "jobs" were consolidated but the task remained the same; each individual counselor merely had to work harder to perform that same task. We held that for purposes of establishing a prima facie case, the remaining counselor replaced the fired counselor. In this case, however, the task itself—and eventually the entire department—was actually eliminated. Under these facts, no one replaced the plaintiff.

Nevertheless, plaintiff argues that the district court erred in requiring that he show that he was replaced because proof that GE *undertook* to fill the vacated position satisfies the requirements of a prima facie case. We do not disagree with plaintiff's legal premise. Indeed, in *Morvay* and *Potter,* this court defined the last factor of the prima facie case as requiring that plaintiff show "that the employer continued to solicit applications for the vacant position." *Morvay,* 708 F.2d at 233 (quoting *Potter,* 518 F.2d at 865).

■ Nonetheless, any error by the district court in requiring plaintiff to show that he was replaced, rather than consider-

ing whether GE continued to accept applications, is not a ground for reversal because there is no genuine issue of material fact as to whether GE accepted applications for plaintiff's position after his discharge. *See Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981) ("An appellate court can find an alternative basis for concluding that a party is entitled to summary judgment and ignore any erroneous basis relied upon by the district court, provided it proceeds carefully so the opposing party is not denied an opportunity to respond to the new theory."); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716, at 658 (1983). In this case, plaintiff has not been denied an opportunity to respond as he has argued before this court that he presented evidence showing that GE continued to accept applications.

Plaintiff first relies on his deposition testimony that Sharpstone interviewed someone by the name of Jaffee for the position of Business Development Manager. Although plaintiff initially stated that the interview was conducted in the late summer of 1982, he then corrected himself that he meant 1981. Plaintiff further deposed (as did Sharpstone) that the decision to discharge him was made in November 1981. An interview conducted some three months before the decision was made to discharge plaintiff is simply irrelevant. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824 (plaintiff must show that *"after* his rejection, the position remained open and the employer continued to seek applicants....") (emphasis supplied).

Plaintiff also relies on the deposition testimony of Palmer that GE interviewed persons for a position utilizing the slot vacated by plaintiff. However, Palmer's uncontradicted testimony was that the position for which interviews were taken "bore no resemblance to the job that [plaintiff] had been doing for us."

In this regard we also place some significance on the fact that there is no indication in the record that the individuals plaintiff asserts were interviewed were not members of a protected group. In the absence of such proof, plaintiff's attempt to establish a prima facie case is particularly unpersuasive. *See Daniels v. Board of Education,* 805 F.2d 203, 210 (6th Cir.1986); *Hudson v. IBM,* 620 F.2d 351, 354 (2d Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980). *See also Valentino v. United States Postal Service,* 674 F.2d 56, 63 (D.C.Cir.1982) ("To establish a prima facie case of discriminatory refusal to promote, a plaintiff need only 'show that ... other employees of similar qualifications *who were not members of the protected group* were indeed promoted at the time the plaintiff's request for promotion was denied.' ") (citation omitted; emphasis supplied); *Hughes v. Chesapeake & Potomac Telephone Co.,* 583 F.Supp. 66, 69 (D.D.C. 1983) ("To establish a *prima facie* case of racial discrimination, plaintiff must show that ... other employees with comparable qualifications and work records *who were not members of a racial minority* were not terminated.") (emphasis supplied).

■ As earlier noted, plaintiff's failure to show that GE attempted to fill his vacated position is not fatal if he can establish other evidence raising an inference of disparate treatment. *See, e.g., Beaven, supra,* 783 F.2d at 675–76. For example, a plaintiff can establish a prima facie case by presenting evidence that similarly situated nonminority employees were not fired. *See id.* at 676; *Hughes, supra,* 583 F.Supp. at 69 ("Because no one replaced plaintiff when she was terminated, to make a *prima facie* case, plaintiff must show that non-minority employees with comparable records were not terminated.").

■ Plaintiff's evidence does not, however, permit such a finding. Plaintiff first observes that he was the only employee of ACBD terminated for unsatisfactory job performance and the only eligible employee denied incentive compensation for 1981. However, there is no evidence that any other ACBD employees had work records and evaluations similar to plaintiff's. Absent proof that other employees were similarly situated, it is not possible to raise an inference of discrimination. *See Reynolds v. Humko Products,* 756 F.2d 469, 472 (6th Cir.1985) (plaintiff failed to establish prima

facie case of discrimination because he did not establish that other employees who "had committed offenses of the same magnitude" were subjected to less discipline); *Hughes, supra,* 583 F.Supp. at 69 ("plaintiff must show that non-minority employees *with comparable records* were not terminated.").

Plaintiff next points out that Bill Huff, the white, number three man in the department, was invited to meetings with Sharpstone, but plaintiff was purposefully excluded. While this evidence might raise an inference of discrimination regarding plaintiff's treatment while employed, this is not the wrong for which plaintiff seeks recovery; *viz.,* discriminatory discharge and denial of incentive compensation. The evidence regarding Huff does not have a close enough nexus to the discriminatory acts alleged as a basis for recovery to *alone* establish an inference of disparate treatment.

Plaintiff next notes that a white employee named Jim Lehman, who had performance problems, was not terminated; instead, another job at a lower level was found for him. The evidence regarding Lehman is found in Mr. Palmer's deposition. His uncontradicted testimony was that Lehman was treated differently in deference to his long service (twenty plus years) with the company. Thus, Lehman was not similarly situated to plaintiff, who had worked for GE for only nineteen months when Sharpstone decided to terminate his employment in November 1981. Accordingly, this evidence is insufficient to raise an inference of discrimination.

Finally, we note that when asked what facts plaintiff had to support his allegation of discrimination, plaintiff generally set forth the following: (1) that he could not accept poor performance as the reason for his termination; (2) that Sharpstone refused to shake his hand; (3) that Sharpstone failed to answer plaintiff's memos; (4) that Sharpstone isolated plaintiff from the mainstream of the division; (5) that Sharpstone told him to leave their shared secretary alone when plaintiff gave her

some work; and (6) that Sharpstone did not spell plaintiff's name correctly. When plaintiff was asked whether he knew of anybody else that Sharpstone treated differently, plaintiff replied, "I did not spend any time finding out that...." Considered in the light most favorable to plaintiff, *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), we do not believe this evidence is sufficient to raise an inference of discrimination.

In affirming the district court's dismissal of plaintiff's Title VII claim, we are not unaware that cases such as this, "involving questions of motive or intent are normally not suited to disposition on summary judgment." *Locke v. Commercial Union Insurance Co.,* 676 F.2d 205, 207 (6th Cir. 1982) (per curiam) (Jones, J., dissenting) (citing *First National Bank v. Cities Service Co.,* 391 U.S. 253, 284–85, 88 S.Ct. 1575, 1590, 20 L.Ed.2d 569 (1968)); *Smith v. Hudson, supra,* 600 F.2d at 66. Nonetheless, "[w]hile the factual disputes involved in most Title VII suits preclude their resolution on summary judgment, summary judgment is available in an appropriate Title VII case." *McKenzie v. Sawyer,* 684 F.2d 62, 67 (D.C.Cir.1982) (citing *Sagers v. Yellow Freight System, Inc.,* 529 F.2d 721, 729 (5th Cir.1976)). For the foregoing reasons, we conclude that plaintiff's failure to establish evidence sufficient to raise an inference of disparate treatment entitled GE to summary judgment on plaintiff's Title VII and section 1981 claims.[3] *Locke v. Commercial Union Insurance Co.,* 676 F.2d 205 (6th Cir.1982) (per curiam) (affirming district court's grant of summary judgment for defendant in light of plaintiff's inability to establish prima facie case in age discrimination action). In light of this disposition, we need not discuss the district court's holdings on pretext and the availability of section 1981 to plaintiff.

### B. *Implied Contract*

The final issue to be decided is whether the district court erred in dismissing plain-

---

**3.** *See supra* note 1.

tiff's breach of implied contract claim. In his complaint, plaintiff alleged basically two implied contractual terms of employment. First, plaintiff alleged that GE failed to follow the terms of its Organization and Policy Guide, which provides that in cases where an employee's performance is less than satisfactory, the company will provide the employee with a performance appraisal, provide him an opportunity to correct any alleged deficiencies, and make an effort to provide him with alternative employment opportunities within the company. Second, plaintiff alleged that GE discharged him without just and sufficient cause.

As to his alleged first term of employment, the district court rejected "plaintiff's unilateral decision to construe his perceived rights under defendant's policies as contractual."[4] As to his alleged second term of employment, the court held that "[s]ince plaintiff's discharge was not 'motivated by the desire to punish [him] for seeking benefits to which he is entitled by law', *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 734 (Ky.1983), he is terminable at will." Op. at 35.

*Firestone*, however, is not in point. Therein, the issue was "does a complaint seeking damages for wrongful discharge because an employee was terminated for pursuing a claim ... for workers' compensation state a cause of action?" *Id.* at 731. The Kentucky Supreme Court held that such a claim is actionable. However, the court did not address the issue before us. In *Firestone*, as well as the other cases cited by the district court, it was a given fact that the employment relationship was "at will." In the present case, the issue is whether Kentucky recognizes a cause of action for breach of an implied contract to discharge only for cause.

In support of his position, plaintiff cites *Shah v. American Synthetic Rubber Corp.*, 655 S.W.2d 489 (Ky.1983), wherein the plaintiff alleged that the defendant fired him without cause in violation of a contract that he would be fired only for cause in accordance with policies and procedures established by the defendant. In reversing the trial court's grant of summary judgment in favor of the defendant, the Kentucky Supreme Court stated:

Shah seeks enforcement of a covenant beyond one for permanent employment or employment for an indefinite term. He seeks relief for breach of ASRC's covenant that if he survived the 90–day probationary period he could be fired only for cause—work-connected cause—in accordance with the policies and procedures of the company. Here the parties fixed the term of Shah's employment—employment until he was fired for cause in accordance with the policies and procedures of the company. Enforceability of this covenant in a contract between an employer and an individual employee has not heretofore been decided in this jurisdiction.

Protection of employees against discharge without cause is routinely provided under collective bargaining agreements as well as under civil service statutes and ordinances. *See* cases and statutes collected in 93 Harv.L.Rev. 1816, 1816, n. 1 (1980). It is there estimated that one-third of the entire national work force is accorded such protection. Employers and individual employees should be equally free to contract against discharge without cause, as Shah and ASRC are presumed for purposes of ASRC's motion for summary judgment to have done. *We join a number of other jurisdictions which hold that parties may enter into a contract of employment terminable only pursuant to its express terms—as "for cause"—by clearly stating their intention to do so, even though no other considerations than services to be performed or promised, is expected by the employer, or performed or promised by the employee.*

---

**4.** The court also held that the policies do not apply to plaintiff's position, citing Palmer's deposition. As to this sub-issue, a disputed issue of material fact exists as Ms. Moran, a GE employee, deposed that the policies were applicable to ACBD employees.

*Id.* at 491–92 (citations omitted; emphasis supplied). Therefore, it is clear that the district court erred in its implicit holding that, under Kentucky law, all employees are terminable at will unless the discharge was motivated by the desire to punish the employee for seeking benefits to which he is entitled by law.

■ As stated, the district court also believed that plaintiff's proof established only a unilateral belief that GE's policies were contractual. However, plaintiff presented copies of the policies and testified that they were shown to him during the preemployment negotiations and during his first week of employment. In *Shah,* the Kentucky Supreme Court stated:

> Whether Shah's employment contract contained a "termination for cause only" covenant *or whether he was fired in accordance with company policies and procedures* for one or more of the many causes alleged by ASRC cannot be resolved against him on ASRC's Motion for a Summary Judgment. *Murphy v. Taxicabs of Louisville, Inc.,* Ky., 330 S.W.2d 395 (1959). These issues must be resolved on a motion for a directed verdict or upon a jury verdict after a plenary trial on the merits and after application of the good faith standard established in *Crest Coal Company, Inc. v. Bailey,* Ky., 602 S.W.2d 425 (1980).

655 S.W.2d at 492 (emphasis supplied). Under this authority, the district court erred in granting summary judgment on plaintiff's implied contract claim.

### III.

For the reasons set forth above, the district court's grant of summary judgment on, and dismissal of, plaintiff's Title VII and section 1981 claims is AFFIRMED. The district court's grant of summary judgment in favor of GE on plaintiff's state law breach of contract claim is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion. We express no opinion as to the merits of plaintiff's breach of contract claim.