724 F.Supp. 521 (1989)
Joyce G. WILBURN, Plaintiff,
v.
The DIAL CORPORATION, Defendant.
No. 87-2594-TUB.
United States District Court, W.D. Tennessee, W.D.
September 11, 1989.
*522 Richard B. Fields, Memphis, Tenn., for plaintiff.
Curtis L. Mack, Atlanta, Ga., for defendant.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TURNER, District Judge.
Presently before the court is the defendant's motion for summary judgment filed January 30, 1989 pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]
The plaintiff, Joyce G. Wilburn, a black female, has filed the current action under both 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq. (Title VII) against the defendant, The Dial Corporation. Plaintiff alleges that she is entitled to relief under both federal statutory provisions due to the fact that the defendant denied her a promotion on the basis of her race rather than a failure to meet the specific job qualifications of the position for which plaintiff applied as alleged by the defendant.
The defendant is a corporation with its headquarters in Phoenix, Arizona. It maintains a facility located at 1554 Thomas Street, Memphis, Tennessee where the alleged wrongful conduct is to have occurred.

Facts
The relevant facts underlying the current action are taken from the statement of facts in defendant's motion for summary judgment. The defendant maintains a facility in Memphis, Tennessee in which the defendant engages in the production, packaging and distribution of consumer home and personal care products. The overall management of the Memphis facility is the responsibility of the plant manager, Anthony Bernot.
In June of 1979 the defendant hired the plaintiff as a quality control chemist. (Defendant's Motion at 2; Defendant's Motion, Plaintiff's Depo. at 19). As quality control chemist the plaintiff's duties consisted of performing "... analytical tests and check[ing] all the products, all the raw materials ..." and included the training of one quality control technician and two other quality control chemists. (Defendant's Motion, Plaintiff's Depo. at 20, 22, 27-29).
Two and one half years later in December of 1981, the plaintiff was promoted to senior quality control chemist in which her duties remained primarily "technical" in the testing and analysis of Dial products. (Defendant's Motion at 2). As noted by the plaintiff, the position of senior quality control chemist was not a "supervisory" one, although the plaintiff would act as substitute for the quality control manager when he was absent from the facility. (Defendant's Motion, Plaintiff's Depo. at 33).
*523 In April 1983, the plaintiff was promoted to contract manufacturing supervisor in which capacity the plaintiff as characterized by the defendant, acted as a "liaison" between the Memphis facility and the defendant's three manufacturing subcontractors located in Danville, Illinois, Stockton, California and Elkhart, Indiana. (Defendant's Motion at 3; Defendant's Motion, Plaintiff's Depo. at 41-43). As the contract manufacturing supervisor, the plaintiff states that she "... traveled to different locations, supervised the operation, made sure they were producing product to Dial specifications ... assisted in inventories and ... assisted in any kind of technical problems they had." (Defendant's Motion, Plaintiff's Depo. at 42). Again, plaintiff's duties as contract manufacturing supervisor did not include permanent supervisory responsibility over employees, although the plaintiff continued to act as substitute when other supervisors were on vacation or sick leave. (Defendant's Motion at 3; Defendant's Motion, Plaintiff's Depo. at 43).
The defendant has submitted two written performance evaluations for the plaintiff in her capacity as contract manufacturing supervisor for the years of April 1983 to 1984, and April 1984 to March 1985 respectively. Although it is contended by the defendant that the position of contract manufacturing supervisor was one which did not involve permanent supervisory responsibilities, the plaintiff's review for the year of April 1983 to 1984 notes that "[i]n her new position, Mrs. Wilburn has moved into her first supervisory job that requires her to plan, implement, and control the output of others." Further, "... she has trained in most supervisory positions and can successfully fill in for most supervisors." (Defendant's Motion, Bernot Affidavit, Attch. G). As an objective for her second review period, the plaintiff was instructed to "... learn the production supervisor's job." (Defendant's Motion, Bernot Affidavit, Attch. G).
In April of 1985, the plaintiff exchanged positions with the blending supervisor, in order that the plaintiff could gain, for the first time as alleged by the defendant, actual supervisory experience on a daily basis. (Defendant's Motion at 3). As blending supervisor, the plaintiff's responsibilities included, among others, the supervision of approximately seven employees and the training of blending personnel. (Defendant's Motion at 4). During the period in which the plaintiff held the position of blending supervisor, she was involved in two disciplinary procedures with employees under her supervision, although she was not involved in any aspect of the defendant's labor relations, nor interaction with union officials or shop stewards. (Defendant's Motion, Plaintiff's Depo. at 64-69). As admitted by the plaintiff, her tenure as blending supervisor was the first time in which the plaintiff was responsible for the daily supervision of employees on a consistent, continuous basis. (Defendant's Motion, Plaintiff's Depo. at 106).
Due to the transfer of the production manager at the Memphis facility, this position became vacant in November 1986. At that time the defendant posted a notice at the Memphis plant soliciting qualified applicants in addition to placing an advertisement for applicants in the Memphis Commercial Appeal. The necessary job requirements as determined by the defendant consisted of:
A Bachelor's degree in Business (B.B.A.), Science (B.Sc.), or Engineering (B.Eng.); three to four year experience in manufacturing including experience in production, maintenance/mechanical and quality control; and four to five years of production supervisory experience.
(Defendant's Motion at 6; Defendant's Motion, Bernot Affidavit at 4; Defendant's Motion, Proseus Affidavit at 4-5). Similarly, the defendant's advertisement in the Commercial Appeal states that the qualified applicant must have a "... Bachelor's degree in Business, Engineering or Science with 4 to 5 years supervisory experience in production." (Defendant's Motion, Bernot Attch. F). Although the advertisement notes that responsibilities of the position include maintaining high production and quality standards, the ad does not include the requirement that an applicant possess *524 three to four years experience in manufacturing.
In January 1986, the plaintiff applied for the production manager position, but was subsequently rejected, this rejection forming the basis of the present racial discrimination action. The plaintiff alleges that on March 27, 1987, the date on which the production manager's position was filled, that she was the most qualified applicant due to the fact that she possessed a degree in Microbiology and the required supervisory qualifications when her job experience as contract manufacturing supervisor and blending supervisor are combined. The plaintiff further alleges that her qualifications were superior to those of Thomas Webb, a white male who was ultimately awarded the position, in that Webb never worked in the Memphis facility and possessed a Bachelor's degree in Law Enforcement. (Plaintiff's Response at 2).
Conversely, the defendant alleges that as of March 27, 1987, the plaintiff was not qualified for the position of production manager due to her lack of the required four to five years of production supervisory experience, resulting in little exposure to personnel management, labor relations and her lack of "... three to four years of experience in two of the three components of manufacturing experience essential to the position of production manager: production and maintenance/mechanical." (Defendant's Motion, Bernot Affidavit at 6).[2]
Despite the plaintiff's initial rejection as a qualified applicant for the production manager position, the plaintiff was subsequently promoted to that position eight months later on January 1, 1988. Plaintiff therefore alleges that the required four to five years of production experience, adopted as a qualification for the position by the defendant in November 1986, was not a legitimate qualification for the position. (Plaintiff's Response to Defendant's Motion for Summary Judgment at 2). In contrast, it is the defendant's position that a later relaxation of an employment requirement is not probative of discrimination and thus is irrevelant to this action. (Defendant's Reply to Plaintiff's Response at 4). Thus, the defendant seeks summary judgment in its favor on the basis that as of March 27, 1987, the plaintiff was not qualified for the position of production manager.
A review of the facts and all documents submitted to this court indicate that the defendant's motion must be denied.

Preliminary Issues
Due to the fact that there has been a clarification by the United States Supreme Court of the applicable law in actions brought pursuant to 42 U.S.C. § 1981 subsequent to the commencement of the present action, and the filing of the defendant's motion at issue, the case of Patterson v. McLean Credit Union, ___ U.S. ___, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) as applied to the current facts at issue, will be addressed at the outset.
In Patterson, the Supreme Court, reaffirming prior precedent, held that 42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of private contracts. Id. 109 S.Ct. at 2370. See also Runyon v. McCrary, 427 U.S. 160, 173, 96 S.Ct. 2586, 2595, 49 L.Ed.2d 415 (1976). Under Patterson, it is therefore clear that section 1981 may provide a basis for relief against racial discrimination in private sector employment where an employment contract is at issue.
However, as held in Patterson, to obtain relief pursuant to section 1981 for the denial of a promotion based on racial discrimination, the change in position denied the plaintiff must be such that it involved the opportunity to enter into a new contract with the employer. Id. ___ U.S. at ___, 109 S.Ct. at 2377. It is thus the employer's refusal to enter a contract on the basis of race which is actionable pursuant to the language of section 1981. In contrast, where a plaintiff's allegations are of discrimination *525 in the "conditions" of employment, section 1981 is inapplicable, and the proper remedy for the plaintiff is to file an action under Title VII which prohibits discrimination in the terms, conditions or privileges of employment. Id. at ___, 109 S.Ct. at 2374.
Although the Patterson court clarified that section 1981 prohibits employment discrimination based on race when the formation of a contract is at issue, the Supreme Court gave limited guidance as to what elements in the promotional setting will rise to the level of a new contract. Basically, the court left much to the evaluation of the lower court in stating:
In making this determination, a lower court should give a fair and natural reading to the statutory phrase `the same right ... to make ... contracts' and should not strain in an undue manner the language of § 1981. Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and employer is such a claim actionable under § 1981.
Id. at 2377.
In its amended motion for summary judgment filed August 30, 1989, the defendant asserts that the plaintiff has failed to show that defendant's refusal to promote the plaintiff interfered with the plaintiff's legal rights to enforce a contract. In support of its position the defendant relies on Williams v. National R.R. Passenger Corp., 716 F.Supp. 49 (D.D.C.1989) which construed the concept of a "new and distinct" relationship as not including a situation in which the only change in the employment relationship disputed would be a change in pay. Id. at 51.
Although arguably the Williams court has given a correct interpretation to Patterson, it is the opinion of this court that much more is involved then a mere change in pay as presented by the current facts. As the organizational chart submitted by the defendant illustrates, the department manager has six departments which constitute key areas of operation under his/her supervision. (Defendant's Motion, Proseus Attch. A). In addition to a significant increase in salary, this position as reiterated by the defendant requires substantial supervisory skills. Further, not only is the position of production manager just one step removed from plant manager itself, but the position was advertised to the public at large.
Viewing the facts in the light most favorable to the plaintiff, pursuant to Federal Rule of Civil Procedure 56 this court finds that there are genuine issues of material fact as to whether the promotion to the position of production manager would rise to the level of a new and distinct relationship as between the plaintiff and the defendant, and therefore, summary judgment on this issue is denied. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c).
Lastly in the plaintiff's response to the defendant's motion for summary judgment, the plaintiff states that following her subsequent promotion to production manager on January 1, 1988, the defendant placed upon her an inordinate amount of work. (Plaintiff's Response to Defendant's Motion for Summary Judgment at 3 No. 4). To the extent, if any, this constitutes an allegation of retaliation, as noted by the defendant in its subsequent response, it will not be considered by this court in ruling on the defendant's motion for summary judgment due to the fact that such an allegation is outside the scope of the pleadings and the plaintiff's right to sue letter. (Defendant's Reply to Plaintiff's Response at 9 No. 4). See Equal Employment Opportunity Com'n v. Bailey Co., Inc., 563 F.2d 439, 446 (6th Cir.1977) (EEOC Complaint is limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination).

Discussion
Federal Rule of Civil Procedure 56(c) states that a summary judgment motion may be granted where "... the pleadings, depositions, answers to interrogatories and admissions on file ... show there is no genuine issue as to any material fact and that the moving party is entitled to *526 judgment as a matter of law." Fed.R. Civ.P. 56(c). It is settled that the moving party for summary judgment bears the burden of establishing to the court an absence of a genuine issue as to any material fact before summary judgment may be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Pursuant to Federal Rule of Civil Procedure 56(c) summary judgment is appropriate against a party "... who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. In essence, there can be no genuine issue as to a material fact on the basis that the complete failure of proof on an essential element of the nonmoving party's case, renders all other facts immaterial. Id.
Further, upon the consideration of a summary judgment motion all evidence of the nonmovant is taken as true, and all justifiable inferences are to be determined in his favor. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513. Although the defendant bears the initial burden of establishing that there is no issue of material fact in support of his summary judgment motion, the plaintiff in turn is not relieved of producing evidence that would support a jury verdict in his favor. Id. at 256, 106 S.Ct. at 2514.
The Sixth Circuit has expanded on the above standard in stating that on a motion for summary judgment the "... movant has the burden of showing conclusively that there exist no geniune issue as to a material fact." Blakeman v. Mead Containers, 779 F.2d 1146, 1150 (6th Cir.1985) (quoting Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979)).
Although cases from the Sixth Circuit have noted that summary judgment is not particularly suited to cases which raise issues of motive or intent, summary judgment is available in an appropriate employment discrimination case. Shah v. General Elec. Co., 816 F.2d 264, 271 (6th Cir.1987).
Title 42 of the United States Code provides two avenues of relief against employment discrimination on the grounds of race. Under 42 U.S.C. § 1981 "... [a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ..." in every state and territory. 42 U.S.C. § 1981 (1981). Similarly, 42 U.S.C. § 2000e-2(a)(1) & (2) states that it is an unlawful employment practice to "... fail or refuse to hire or to discharge any individual ..." or to "... limit, segregate or classify ..." employees because of such individuals race. 42 U.S.C. § 2000e-2(a)(1) & (2) (1981).
To prevail under section 1981 it is the plaintiff's ultimate burden to prove purposeful discrimination. Patterson, ___ U.S. at ___, 109 S.Ct. at 2377. In cases in which there is no direct evidence of unlawful discrimination, the United States Supreme Court has designed a framework of proof to analyze in the disparate treatment context the ultimate issue of whether the plaintiff was the victim of intentional discrimination. Id. Where a plaintiff who has no direct evidence of discriminatory motive, seeks to prevail under a disparate treatment theory, the plaintiff "... must demonstrate that the employer has treated some people less favorably than others because of their race, color, religion, sex or national origin." Rowe v. Cleveland Pneumatic Co., 690 F.2d 88, 92 (6th Cir.1982). In such cases, where the defendant's subjective intent is critical, the Supreme Court's "framework" as established by McDonnell Douglas Corp. v. Greene, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) provides a means in which discriminatory motive may be inferred from the mere fact of differences in treatment. See Patterson, ___ U.S. at ___, 109 S.Ct. at 2378; Rowe, 690 F.2d at 92. The McDonnell-Burdine analysis, which defines the burdens which an employment discrimination plaintiff must meet at trial, is equally applicable in the evaluation of a motion for summary judgment. McKenzie v. Sawyer, 684 F.2d 62, 71 (D.C.Cir.1982).
*527 Under McDonnell, the plaintiff in an employment discrimination suit bears the initial burden of establishing a prima facie case of discrimination. Patterson, ___ U.S. at ___, 109 S.Ct. at 2378. This burden is not onerous and where the discrimination is based on the grounds of race merely requires that the minority plaintiff show:
that [the individual] applied for and was qualified for an available position, that [the individual] was rejected, and that after [the individual] was rejected respondent either continued to seek applicants for the position or ... filled the position with a white employee.
Id. See also McDonnell, 411 U.S. at 802, 93 S.Ct. at 1824. Should the plaintiff meet each of the defined elements, the plaintiff has established a prima facie case and an inference of discrimination arises. Patterson, ___ U.S. at ___, 109 S.Ct. at 2378. See also, Burdine, 450 U.S. at 257, 101 S.Ct. at 1095.
If the plaintiff succeeds in establishing a prima facie case of racial discrimination, the burden then shifts to the employer defendant to rebut the discriminatory inference. Patterson, ___ U.S. at ___, 109 S.Ct. at 2378. To succeed, the defendant must present evidence that the plaintiff was rejected, or another applicant was chosen, for a legitimate nondiscriminatory reason. Id. at ___, 109 S.Ct. at 2378. The defendant may meet this burden if he can produce evidence which raises a genuine issue of fact. Burdine, 450 U.S. at 257, 101 S.Ct. at 1095. It is not required at this stage of the analysis that the defendant convince or persuade the trier of fact of his objective reasons. Id.
Should the defendant meet his burden of proffering legitimate reasons which raise a genuine issue of fact, the defendant successfully rebutts the inference of discrimination and the inference drops from the case. Id. at 255 n. 10, 101 S.Ct. at 1095 n. 10. See also, Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984); Wrenn v. Gould, 808 F.2d 493, 501 (6th Cir.1987). The ultimate burden is then retained by the plaintiff to prove to the trier of fact by a preponderance of the evidence that the defendant's proffered reasons are not true but rather a pretext for his decision. Id. 450 U.S. at 253, 101 S.Ct. at 1093. Under Burdine, the plaintiff may satisfy this ultimate burden in one of two ways: either by directly persuading the trier of fact that the employer's discriminatory reasons motivated his decision, or by persuading the trier of fact that the employer's explanation is unworthy of credence. Id. at 256, 101 S.Ct. at 1095.
To demonstrate that the employer's reasons are pretextual the plaintiff is not limited to presenting evidence of a certain type and thus, such evidence may take a variety of forms. Patterson, ___ U.S. at ___, 109 S.Ct. at 2378. Further, although the plaintiff may demonstrate that the defendant's proffered reasons are pretextual with a showing that the plaintiff was the better qualified applicant, the plaintiff is by no means required to make such a showing in order to prevail. Id. at ___, 109 S.Ct. at 2378. In the disparate treatment context, a plaintiff may rely upon "comparative" evidence to meet his burden by demonstrating that the treatment of the plaintiff by the defendant differed from that accorded to otherwise "similarly situated" individuals not within plaintiff's protected group. Shah v. General Elec. Co., 816 F.2d 264, 268 (6th Cir.1987).
Under the McDonnell-Burdine analysis, when the disputed element of the plaintiff's prima facie case is whether the plaintiff was qualified for the position, it should be noted that it is always the employer's motivation which is at issue, and not the applicant's perception, or even an objective assessment of the qualifications required for a particular position. Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir.1987). Further, an employer is free to choose among qualified applicants, for Title VII does not "diminish lawful traditional management prerogatives" in making such a choice, as long as the employer is not motivated by discriminatory reasons. Id. The employer's particular business judgment on a given occasion is not the relevant issue in a Title VII case. Id. In addition, where the public safety is at issue as in challenges brought *528 against employer qualification requirements by commercial airline pilots, employer's are granted additional flexibility in their determination of relevant qualifications. Murnane v. American Airlines, Inc., 667 F.2d 98, 101 (D.C.Cir.1981), cert. denied, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982).
In contrast, although an employer may be entitled to select among applicants on the basis of his personal business judgment, Title VII and section 1981 preclude such a selection to be based upon an applicant's race.
A review of the facts and documents submitted to this court by both parties, viewed under the McDonnell-Burdine framework in the light most favorable to the plaintiff, suggests that the trier of fact could find that the plaintiff's race was the motivating factor in the defendant's refusal to promote the plaintiff to the position of production manager. It is not disputed by the parties that the plaintiff belongs to a racial minority group, that on March 27, 1987, the defendant rejected the plaintiff as unqualified for the production manager position, or that the position at issue was on that date filled by a white employee. The defendant's motion for summary judgment must be denied on the basis that there is a genuine issue of fact as to whether the plaintiff was qualified for the position of production manager on the above date. As noted by the Burdine court, to establish her prima facie case on this element, the plaintiff's burden is not onerous.
It is noted at the outset that the plaintiff has presented no direct evidence of racial discrimination. When asked why the plaintiff thought she had been the victim of unlawful discrimination, the plaintiff replied that she felt that she was the most qualified for and deserved the position. (Defendant's Motion, Plaintiff's Depo. at 181). Despite the lack of direct evidence however, this court finds that circumstantial factors and evidence of disparate treatment raise a disputed issue of fact as to the true motivation of the defendant.
Following the vacancy of the production manager's position at the defendant's Memphis facility, it was determined by the defendant that a qualified applicant for the position would possess a Bachelor's degree in Business, Science, or Engineering; three to four years of experience in manufacturing; and, four to five years experience in production supervision. (Defendant's Motion at 6; Defendant's Motion, Bernot Affidavit at 4, Attch. E; Defendant's Motion, Proseus Affidavit at 4-5, Attch. C). The advertisement placed in the Commercial Appeal parallels the defendant's stated requirements with the exception that the three to four year experience requirement in manufacturing is absent, although manufacturing areas of responsibility are included. The defendant notes that of the three qualifications listed above, the area of most emphasis was in past production experience, with the least weight given to the specific Bachelor's degree of a potential applicant. (Defendant's Motion at 6). This court notes that although the relative weights of the qualifications stated above were alleged to be known to the defendant, the defendant has not provided evidence to establish that the assigned "weights" were advertised or made known to those individuals applying for the production manager's position.
As of March 1987, the plaintiff's qualifications as compared to those required by the defendant, reflect that the plaintiff meet the defendant's educational requirement, having been awarded a Bachelor's degree in Microbiology, but was deficient in the areas of supervisory experience. During her tenure at The Dial Corporation, the plaintiff acquired approximately two years of supervisory experience as blending supervisor which is not disputed by either party. The plaintiff also held the position of contract manufacturing supervisor for two years in which the plaintiff was not involved in daily supervisory functions; however, during this term the plaintiff did fill in for other supervisors while they were absent and appears to have had considerable experience in coordinating the activities between the Memphis facility and three subcontractor operations. (Defendant's Motion at 27; Defendant's Motion, Plaintiff's Depo. at 50-51). A genuine issue *529 thus arises as to whether the plaintiff's duties as contracts manufacturing supervisor should have been considered as "supervisory experience" by the defendant when the plaintiff's qualification for the position at issue were reviewed prior to March 27, 1987. As noted by Patterson, the plaintiff only has to show that she was qualified in the position to establish her prima facie case. She is not required to establish that she was more qualified than Webb.
In contrast to the plaintiff, the qualifications of Thomas Webb, who was selected to fill the production manager's position on March 27, 1987 reflect that Webb possessed a Bachelor's degree in Law Enforcement; was employed by Tempo Industries in a supervisory position for eighteen months prior to his employment with the defendant; and, had been employed by the defendant in some form of supervisory capacity from June of 1981 until he was selected to fill the position at issue. (Defendant's Motion at 7-8; Defendant's Motion, Webb Affidavit). Thus, although Webb possessed the supervisory experience sought by the defendant, the defendant chose to relax the specific Bachelor's degree requirement in finding Webb qualified.
As previously discussed, where a plaintiff possesses no direct evidence of discrimination, under the disparate treatment theory a plaintiff may meet the elements required to establish a prima facie case of discrimination by showing the employer has treated some people less favorable due to their race. In the present example a genuine issue of fact exists as to whether the plaintiff was the victim of disparate treatment in light of the fact that the defendant chose to relax one of the required qualifications in considering Webb for the disputed position, but refused to do the same for the plaintiff.
This court further notes that as of March 27, 1987, a genuine issue of fact arises as to whether the defendant's proffered reasons for refusing to promote the plaintiff was pretextual in light of the fact that the plaintiff was informed by Bernot that the production manager's position was to be filled by "... somebody we could promote to plant manager." (Defendant's Motion at 20; Defendant's Motion, Plaintiff's Depo. 186-187). The defendant offers no explanation as to why, assuming competent performance as production manager, the plaintiff could not be considered eventually for the plant manager's position.
Lastly, this court cannot ignore the subsequent promotion of the plaintiff to the position she desired a mere eight months later on January 1, 1988. (Plaintiff's Response to Defendant's Motion at 2, No. 1). As discussed previously, an employer is entitled to select among qualified applicants at its discretion as long as the employer's decision is not based on discriminatory motives. However, the defendant's strong position that on March 27, 1987, the plaintiff was extremely lacking in supervisory experience which rendered her "unqualified", only to find her "qualified" with eight additional months of experience as the blending supervisor (one area of six under the production manager's responsibility) borders without further explanation on inconsistency. This court therefore finds this to be an additional factor raising a genuine issue as to whether the noted deficiencies in the plaintiff's work history were the actual motivating factors behind the defendant's refusal to promote the plaintiff on the earlier date or conversely, a pretext.

Conclusion
Plaintiff alleges that she has presented evidence to meet all the elements required to establish a prima facie case of racial discrimination. In response, the defendant alleges that the plaintiff was unqualified for the position at issue and thus, it has proffered a legitimate reason for refusing to promote the plaintiff. Plaintiff has further submitted evidence of disparate treatment raising an inquiry as to whether a deficiency in the plaintiff's qualifications was in fact a pretext for the defendant's discriminatory motive. As stated by the Supreme Court in Anderson v. Liberty Lobby Inc., 477 U.S. at 250, 106 S.Ct. at 2511, the proper inquiry for the court when presented with a motion for summary judgment *530 is whether there is a genuine issue for trial. It is not the court's function at this stage of the proceedings to make findings a fact. Id.
A review of the facts as submitted presents a genuine issue as whether the plaintiff was qualified to fill the production manager's position on March 27, 1987, or whether the defendant wrongfully failed to promote the plaintiff based on discriminatory motives.
Summary judgment for the defendant is thus denied.
IT IS SO ORDERED.
NOTES
[1] Technically, the defendant's motion for summary judgment addresses the plaintiff's 42 U.S.C. § 1981 claim alone. However, by order of this court filed on March 2, 1989, the plaintiff was granted permission to amend her complaint to add a claim pursuant to Title VII, and the defendant's motion for summary judgment was reinstated. The timeliness of the plaintiff's Title VII claim is addressed by separate order of this court. The analysis of the current order in response to the defendant's motion for summary judgment is equally applicable to both the plaintiff's section 1981 and Title VII claims due to the fact "... [t]he order and allocation of proof, applicable in a section 1981 case are the same as in a Title VII action." Sewell v. County Fiscal Court, 863 F.2d 461, 466 (6th Cir.1988) (quoting Shah v. General Elec. Co., 816 F.2d 264, 267 n. 1 (6th Cir.1987)).
[2] Prior to the plaintiff's employment with the defendant, the plaintiff held no position which included supervisory duties.