RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0301p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————————

DOUGLAS LINDSAY SR., *et al.*,
            *Plaintiffs-Appellants,*

            *v.*

BRENT YATES, In his individual and official
capacity, *et al.*,
            *Defendants-Appellees.*

No. 08-3633

———————————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-01625—Ann Aldrich, District Judge.

Argued: June 18, 2009

Decided and Filed: August 21, 2009

Before: KEITH, MOORE, and COLE, Circuit Judges.

———————————————

**COUNSEL**

**ARGUED:** Edward L. Gilbert, LAW OFFICES, Akron, Ohio, for Appellants. Maura L. Hughes, CALFEE, HALTER & GRISWOLD LLP, Cleveland, Ohio, for Appellees. **ON BRIEF:** Edward L. Gilbert, Michael J. Wright, LAW OFFICES, Akron, Ohio, for Appellants. Maura L. Hughes, Jeffrey J. Lauderdale, CALFEE, HALTER & GRISWOLD LLP, Cleveland, Ohio, James L. Childress, CALHOUN, KADEMENOS & CHILDRESS CO., LPA, Mansfield, Ohio, for Appellees.

———————————————

**OPINION**

———————————————

DAMON J. KEITH, Circuit Judge. Plaintiffs-Appellants Douglas and Tina Lindsay filed a complaint against Defendants-Appellees Brent Yates and JoAnn Yates, among others, alleging racial discrimination in the sale of real property in violation of 42 U.S.C. §§ 1982, 3603, 3604 and Ohio Rev. Code Ann. § 4112.02(H)(1), racial discrimination through interference with contractual rights in violation of 42 U.S.C. § 1981, breach of contract, and

1

"intentional, fraudulent, wanton, and discriminatory breach of contract."  The district court dismissed the complaint, holding that the Lindsays had failed to plead facts establishing a housing discrimination claim under the *McDonnell Douglas* framework.  This Court subsequently reversed the district court's finding that the pleadings were insufficient and remanded the case back for further proceedings.  On remand, the district court, among other things, granted JoAnn and Brent Yates' motion for summary judgment and dismissed all federal and state claims against them, ruling that a jury could not find from the evidence that the property at issue "remained available" in satisfaction of the *prima facie* case for housing discrimination.  The Lindsays timely appealed the district court's decision.  For the following reasons, we **REVERSE** the district court's ruling granting the Yateses' motion for summary judgment and **REMAND** for further proceedings consistent with this opinion.

## I.

This case arises from JoAnn Yates' ["JoAnn"] refusal to sell her family home at 2268 Eckert Road in Mansfield, Ohio to qualified African-American buyers Douglas and Tina Lindsay based on her alleged desire to keep the property "in the family."  The property was acquired by JoAnn and her husband Gene Yates ["Gene"] during the 1970s and served as their residence until around 1994.  Record on Appeal Volume I ("ROA") 1562.  The Yateses had two children, Brent Yates ["Brent"] and Deborah Yates ["Deborah"], who both grew up in the home.  ROA 1561-62.  After the parents moved out, Deborah lived there for approximately seven years.  ROA 1567.  The house has remained vacant since Deborah left.  At the time of trial, the properties surrounding 2268 Eckert were either owned directly by members of the Yates family or by Mid Ohio Pipeline, a business entity owned by Brent.  ROA 1489, 1502-03.

The district court summarized the time-line of relevant events:

Around May 2004, with the house vacant, Gene suggested to JoAnn that they sell the home. JoAnn [allegedly] resisted, wanting to "keep it in the family." [ROA 1572.] Ultimately, Gene prevailed, and he and JoAnn contacted defendant Carol Eicher ("Eicher") to list the property for sale. Eicher is a licensed realtor associated with defendant Sluss Realty Company ("Sluss"), a real estate brokerage. On August 8, 2004, Eicher met with Gene and JoAnn Yates. Gene and JoAnn's son, Brent Yates, was also present, as was his wife, Kim. Gene and JoAnn Yates agreed to list the property with

Eicher through Sluss, and signed the listing agreement. The house was put on the market, with the listing to expire on February 8, 2005.

Towards the end of September 2004, Gene Yates was diagnosed with lung cancer. [ROA 1572.] Sometime that fall, he and JoAnn went to Florida. During that time, Eicher would notify Brent and Kim Yates when she was showing the house.

On January 12, 2005, Gene Yates passed away. [Joann alleges] that [a]bout two weeks before his death, [Gene] and JoAnn had agreed to take the house off the market. [ROA 1590.] However, in the subsequent weeks before his death, Gene did not take the house off the market. When he died, the house passed to his estate. At that point, Gene and JoAnn's children tended to a number of JoAnn's financial affairs, including the sale of the house. [ROA 1581-82.] Brent Yates took over responsibility for the sale of the home . . . .

On February 8, 2005, Eicher called Brent Yates to tell him that the listing on his parents' property was about to expire and asked if she should speak with JoAnn. Brent indicated that would not be necessary because he had the authority to handle the paperwork; he subsequently signed a listing extension.

During April 2005, plaintiffs Douglas and Tina Lindsay (the "Lindsays") visited the Yates' property with their real estate agent. The Lindsays subsequently submitted a written offer through their agent to Eicher, the Yates' agent. Eicher conveyed the offer to Brent, who rejected it. However, after some negotiation, the parties arrived at a purchase price of $175,000. On May 12, 2005, the Lindsays signed a purchase agreement, and Brent signed the next day.

On May 24, 2005, Sluss and Eicher informed the Lindsays that the sales contract would be terminated because JoAnn Yates could not bear to part with the property "for sentimental reasons." Based upon certain events that occurred between May 13, when Brent signed, and May 24, when JoAnn terminated the purchase agreement, the Lindsays believe that JoAnn's reason for terminating was pretext; they believe that JoAnn Yates did not want to sell them the property because they are African-American.

The exact timing of these intervening events is highly disputed.

The Lindsays' evidence is inconsistent. They allege that a "couple days" after Brent signed the purchase agreement, the Lindsays visited the property to identify the property lines, which is when they first met Brent Yates. A "couple days" after Brent signed the contract would be Saturday, May 15th. In deposition, Douglas Lindsay thought that the meeting had occurred on a Saturday or Sunday. [ROA 710.]

The Lindsays acknowledge that the contract was terminated on May 24th, which they allege was the day after they met Brent. However, prior to filing this lawsuit, the Lindsays filed a complaint with the United States

Department of Housing and Urban Development in which they stated that the contract was terminated 2-3 days after they met Brent. [ROA 1772.]

Brent Yates' testimony is also inconsistent. He alleges that he met the Lindsays on a Thursday or a Friday, which would presumably be May 19th or 20th. [ROA 1504.] He also states that he was told that the Lindsays stopped by his office three or four days later, but did not meet with him at that time because he was tied up. [ROA 1504.] Brent further states that both of these events took place before he called his mother to tell her there was a buyer. [ROA 1505.] However, Brent also indicates that he told his mother about the purchase agreement within three to five days of his signing, meaning by May 18. [ROA 1500.] When Brent called his mother and told her about the purchase agreement, she [allegedly] said that she did not want to sell the property; it had been Gene who had wanted to sell, not her. [ROA 1500.]

The parties agree that the purchase agreement was terminated on May 24th.

*Lindsay v. Yates (Lindsay III)*, No. 1:05CV1625, 2008 WL 1995355, at *2 (N.D. Ohio May 5, 2008) (brackets added).

Since the Yateses terminated the purchase agreement with the Lindsays, JoAnn, as Executrix of her late husband's estate, has not filed an extension of the real estate listing or otherwise made any effort to sell the home. ROA 658. The estate of Gene Yates remains the owner of 2268 Eckert. *Id.* After the commencement of the instant lawsuit in June 2005, JoAnn offered to sell the house to the Lindsays on the same terms as the original purchase agreement, but the Lindsays declined the offer. *Lindsay III*, 2008 WL 1995355, *3.

## II.

The Lindsays filed a seven-count complaint in the Northern District of Ohio on June 16, 2005, against defendants JoAnn Yates, Brent Yates, the Estate of Gene Yates, Carol Eicher, and Sluss Realty Company. In relevant part, the complaint alleged racial discrimination in the sale of real property in violation of 42 U.S.C. §§ 1982, 3603, 3604 and Ohio Rev. Code Ann. § 4112.02(H)(1), as well as racial discrimination through interference with contractual rights in violation of 42 U.S.C. § 1981.[1] In considering the Fed. R. Civ.

---

[1] The Lindsays' complaint contained seven claims in total: (1) racial discrimination in the sale of real property in violation of 42 U.S.C. § 1982; (2) racial discrimination in the sale of real property in violation of 42 U.S.C. § 3603; (3) racial discrimination in the sale of real property in violation of the Fair Housing Act, 42 U.S.C. § 3604; (4) racial discrimination through interference with contractual rights in violation of 42 U.S.C. § 1981; (5) racial discrimination in the sale of real property in violation of Section 4112.02(H)(1) of the Ohio Revised Code; (6) breach of contract; and (7) "intentional, fraudulent, wanton,

P. 12(c) Motion for Judgment on the Pleadings filed by JoAnn Yates, Brent Yates, and the Estate of Gene Yates, the lower court found that the Lindsays had failed to plead facts establishing each element of a *prima facie* case for racial discrimination under the *McDonnell Douglas* framework. Accordingly, the court dismissed all of the Lindsays' federal and state discrimination claims pursuant to Fed. R. Civ. 12(b)(6). *Lindsay v. Yates* ("*Lindsay I*"), No. 1:05 CV1625, 2006 WL 2988222, *3 (N.D. Ohio Oct. 17, 2006). The court further declined to exercise supplemental jurisdiction over the remaining state contract claims. *Id.* at *4.

The Lindsays appealed dismissal of their claims under 42 U.S.C. §§ 1981, 1982, and 3604 to this Court. Applying *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), we held that a housing discrimination plaintiff need not plead facts establishing a *prima facie* case under the *McDonnell Douglas* framework to state a claim for relief. *Lindsay v. Yates* ("*Lindsay II*"), 498 F.3d 434, 439-40 (6th Cir. 2007). Thus, we reversed the lower court's ruling that the Lindsays' pleading was insufficient and remanded for further proceedings. *Id.* at 442.

Following remand, JoAnn and Brent Yates, later joined by the Estate of Gene Yates, moved for summary judgment pursuant to Fed. R. Civ. P. 56. They argued the Lindsays could not possibly establish a *prima facie* case of discrimination in housing because the Lindsays did not offer any evidence that 2268 Eckert remained on the market after the purchase agreement was terminated. On May 5, 2008, the district court agreed in a memorandum opinion that a "fair-minded jury" could not conclude "the house remained available, and therefore could not return a verdict for the Lindsays." *Lindsay III*, 2008 WL 1995355, at *5. The court, *inter alia*, granted the Yates Defendants' motion for summary judgment and dismissed all federal discrimination claims against them with prejudice. *Id.* It further dismissed the Lindsays' state law housing discrimination claim with prejudice on the ground that the same federal housing

---

and discriminatory breach of contract." ROA 25-27.

discrimination evidentiary framework applied. *Id.*[2] The Lindsays appealed the district court's decision that same day.

**III.**

This Court reviews *de novo* a district court's grant of summary judgment. *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008). "The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009). The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating a party's summary judgment motion, a court must "consider all facts and inferences drawn therefrom in the light most favorable to the nonmoving party." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995).

---

[2]For a detailed description of the motions filed by the parties following remand and their respective disposition by the district court, see *Lindsay III*, 2008 WL 1995355, at *3-5.

## IV.

Before this Court on appeal are the Lindsays' claims of housing discrimination filed pursuant to the Fair Housing Act (42 U.S.C. § 3604(a))[3], the Civil Rights Act (42 U.S.C. §§ 1981[4], 1982[5]), and Ohio Rev. Code Ann. § 4112.02(H)(1).[6] The analysis of the Lindsays' federal housing discrimination claims, as well as their state claim, is governed by the same legal framework. *See Selden Apartments v. U.S. Dep't of Hous. & Urb. Dev.*, 785 F.2d 152, 159 (6th Cir. 1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Specifically, they turn on the three-part evidentiary standard first developed by the Supreme Court for employment discrimination cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Mencer v. Princeton Sq. Apartments,* 228 F.3d 631, 634 (6th Cir. 2000).[7] On summary judgment, this burden-shifting scheme first

---

[3] 42 U.S.C. § 3604(a) declares it unlawful, "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

[4] 42 U.S.C. § 1981 states in relevant part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

\*\*\*

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

[5] 42 U.S.C. § 1982 states, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

[6] Ohio Rev. Code § 4112.02(H)(1) prohibits any person from "[r]efus[ing] to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race . . . ."

[7] Employment discrimination case law interpreting the parties' respective burdens under *McDonnell Douglas* is fully applicable to housing discrimination cases as well. *Cabrera v. Jakabovitz*, 24 F.3d 372, 383 (2d Cir. 1994); *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1452 (4th Cir. 1990); *see Mencer*, 228 F.3d at 634 (stating analysis applied to federal fair housing discrimination claims "turn[s] on the three-part evidentiary standard first developed in the employment discrimination context by *McDonnell Douglas*.")

requires that the plaintiff present evidence from which a reasonable jury could conclude that there exists a *prima facie* case of housing discrimination. *See Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007); *Mencer*, 228 F.3d at 634. If the plaintiff is successful, the burden shifts to the defendant to offer "evidence of a legitimate, nondiscriminatory reason for" the adverse housing decision. *See id.*; *Mencer*, 228 F.3d at 634. If the defendant carries his burden, the burden shifts back to the plaintiff to "identify evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for unlawful discrimination." *See id.*; *Mencer*, 228 F.3d at 634.

## A. *Prima facie* case

In this appeal, the Lindsays challenge the district court's award of summary judgment in favor of the defendants based on the court's ruling that the Lindsays could not demonstrate a *prima facie* case of housing discrimination. *See generally Lindsay III*, 2008 WL 1995355, at *5. Under *McDonnell Douglas*, " [a] plaintiff may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant or by showing the existence of circumstantial evidence which creates an inference of discrimination." *Talley*, 61 F.3d at 1245. The Lindsays have not offered any direct evidence of intentional discrimination, thus we focus only on the requirements for establishing a *prima facie* case through circumstantial evidence.

*McDonnell Douglas* held that a *prima facie* case of racial discrimination in employment was established when the plaintiff shows that:

> (i) [] he belongs to a racial minority; (ii) [] he applied and was qualified for a job for which the employer was seeking applicants; (iii) [] despite his qualifications, he was rejected; and (iv) [] after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802. This Court has employed a slightly different formulation in the context of housing discrimination. *See Mencer*, 228 F.3d at 634 (noting "[c]ourts have adapted [the *McDonnell Douglas*] test to fair housing claims by requiring the plaintiff to first establish a *prima facie* case of discrimination). Specifically, we have held that a *prima facie* case arises when: (1) the plaintiff is a member of a racial minority; (2) he or she

applied for and was qualified to purchase certain property or housing; (3) he or she was rejected; and (4) the housing remained available thereafter. *Id.* at 634-35. The Yateses concede that the Lindsays can prove the first three elements of this test. However, the Yateses argue the district court correctly found the Lindsays were not able meet the fourth element of *Mencer* ("remained available") in establishing a *prima facie* case. *See Lindsay III*, 2008 WL 1995355, at \*5. The Lindsays counter that the district court erred by requiring them to offer evidence that 2268 Eckert "remained available" after the Yateses terminated the purchase agreement. They contend that the evidence creates a genuine issue of material fact as to the *prima facie* case of discrimination under the *McDonnell Douglas* framework, as modified for housing claims, notwithstanding their inability to satisfy the "remained available" prong.[8] For the reasons below, we rule in favor of the plaintiffs.

The Supreme Court has emphasized that the *prima facie* standard offered in *McDonnell Douglas* was not "inflexible" and that the specific proof required of the plaintiff in that particular case was "not necessarily applicable in every respect in differing factual situations." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 n.6 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802, n.13). Satisfaction of the *McDonnell Douglas* four-element test creates an inference of discrimination "only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978). Thus, the key question this Court must answer is whether the plaintiffs have "presented sufficient evidence to permit a reasonable jury to conclude [they] suffered" an adverse housing action "under circumstances giving rise to an inference of

---

[8]The record confirms the district court's finding that the property at issue did not "remain available," even for the purposes of summary judgment, after the termination of the purchase agreement. *Lindsay III*, 2008 WL 1995355, \*5. JoAnn testified that her home was not currently for sale, that it had not been put up for sale since it was taken off the market in 2005, and that the home remained the property of the Estate of Gene Yates. ROA 658. Furthermore, JoAnn executed a document to withdraw the house from the market soon after terminating the purchase agreement with the Lindsays. ROA 1544. To the extent the Lindsays argue a material issue of fact exists regarding the availability of the house based on JoAnn's offer to sell the property to the Lindsays during litigation settlement negotiations, we agree with the district court that this "is at best a scintilla" of evidence and is insufficient to establish a material issue of fact. *Lindsay III*, 2008 WL 1995355, at \*5. Furthermore, it appears doubtful that such evidence would be admissible given the prohibition against the use of offers to compromise a claim as evidence of liability for that claim. *See* Fed. R. Evid. 408(a).

unlawful discrimination," not whether the *prima facie* elements specifically articulated in *McDonnell Douglas*–as reinterpreted by *Mencer* for housing cases–could be established. *See Blair*, 505 F.3d at 524, 529 (stating the *McDonnell Douglas*-inspired *prima facie* elements did not constitute "rigid requirements"). We remain mindful that the burden of establishing, much less creating a genuine issue of material fact over, a *prima facie* case "is not onerous." *See Burdine*, 450 U.S. at 253.

In *Shah v. General Elec. Co.,* this Court considered a summary judgment order to deny the plaintiff's employment discrimination claim stemming from his termination. 816 F.2d 264 (6th Cir. 1987). Although ultimately affirming the district court's decision, we emphasized the plaintiff need not offer evidence that his "employer continued to solicit applications" to prove a *prima facie* case of discrimination. *Id.* at 269. Embracing the flexibility characterizing *McDonnell Douglas*, we indicated that "some additional evidence tend[ing] to establish the inference of discrimination" could also satisfy the *prima facie* burden. *Id.* "Continuing to solicit applications" is simply the employment analog to the housing discrimination element that a property "remain available" after the plaintiffs were rejected. Accordingly, a plaintiff's inability to create a genuine issue of material fact over the "remained available" element is not necessarily fatal to a *prima facie* housing discrimination claim on summary judgment so long as there exists "additional evidence" from which a reasonable juror could find an inference of discrimination. *See id.* Thus, we rule the district court erred in granting the Yateses' motion for summary judgment on the ground that there was no evidence in the record that 2268 Eckert "remained available."

Nevertheless, a plaintiff cannot carry the *prima facie* burden for showing housing discrimination merely by offering evidence that he was a qualified minority purchaser whose competitive offer for a property was rejected. *See id.* This Circuit has long held that satisfaction of the first three elements of the *McDonnell Douglas prima facie* case "without more" cannot give rise to an inference of unlawful discrimination. *See id.*[9]

---

[9]The Lindsays weakly suggest that it is in "dispute" whether the *prima face* case can be established through demonstration of the first three elements alone. While this may be true of other circuits, the Sixth Circuit has clearly held that mere satisfaction of the first three elements of the *prima*

The something "more" or "additional evidence" typically consists of favorable treatment for similarly-situated individuals not within the plaintiff's protected group. *See id.* (declaring that an employment discrimination plaintiff "supplies this indispensable comparative evidence at the *prima facie* stage through the last prong of the *McDonnell-Douglas* test . . . [i]n particular, by identifying those individuals who are allegedly treated differently.); *see also Talley*, 61 F.3d at 1247 (interpreting *Shah* to hold that the fourth element of the *McDonnell Douglas prima facie* case is established by "showing either that the plaintiff was replaced by a person outside of the protected class or that similarly-situated non-protected employees were treated more favorably than the plaintiff"); *Mitchell*, 964 F.2d at 583-84 (holding that the plaintiff did not satisfy a *prima facie* test because he did not show he was treated differently than similarly-situated individuals).

But while a discriminatory inference is *usually*, and perhaps most readily, generated through evidence of unfavorable treatment of the minority plaintiff vis-à-vis similarly-situated individuals, *McDonnell Douglas* and its progeny do not require this *always* be the case as the Yateses contend. *Cf. Shah*, 816 F.2d at 268 ("individual disparate treatment . . . cases *generally* require indirect evidence from which an inference of discriminatory motive may be drawn, namely, comparative evidence demonstrating that the treatment of the plaintiff differs from that accorded to otherwise 'similarly situated' individuals who are not within the plaintiff's protected group.") (emphasis added) (citation omitted). As this Court has recognized, the *prima facie* inquiry "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely

---

*facie* discrimination case, "without more," cannot give rise to an inference of unlawful discrimination." *Shah*, 816 F.2d at 269. The Lindsays' citations to *Storey v. Sparta Police Dep't*, 667 F. Supp. 1164 (M.D. Tenn. 1987), and *Harrison v. Clemente*, No. 95-3620, 1996 U.S. App. Lexis. 19101 (6th Cir. July 16, 1996) (per curiam) are unpersuasive in this regard as neither of these cases recognized *prima facie* claims based solely on the first three elements of *McDonnell Douglas*. *Storey* found the evidence could support a *prima facie* case of employment discrimination even though the given job position did not "remain available" because the defendant simply gave overtime to non-protected persons rather than hire the minority plaintiff. *See* 227 F. Supp. at 1170. *Harrison* held the African-American plaintiffs could demonstrate a *prima facie* case of housing discrimination when the defendant refused to sell his home to the qualified plaintiffs and took it off the market but subsequently gave it to his daughter who rented it out to other persons. *Harrison*, 1996 U.S. App. Lexis. 19101, *6-8. In both of these cases, the respective courts relied on "something more" than the first three elements of *McDonnell Douglas* to find the possibility of a *prima facie* case of discrimination.

a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Irvin v. Tenn.*, 826 F.2d 1063, *3 n.4 (6th Cir. Aug. 20, 1987) (Table) (quoting *Furnco*, 438 U.S. at 577). A *prima facie* case is established whenever the actions taken by the property owner lead one to reasonably "infer, if such actions remain unexplained, that it is more likely than not that such actions were based on discriminatory criterion" such as race. *See Furnco*, 438 U.S. at 576 (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977)). Keeping this ultimate inquiry in mind, we find that so long as "additional evidence" exists – beyond showing the first three elements of the *McDonnell Douglas* test – that indicates discriminatory intent in "light of common experience," the required "inference of discrimination" can be made in satisfaction of the *prima facie* case. This holds true even if the plaintiff is not necessarily able to identify similarly-situated individuals outside of the relevant protected group who were treated more favorably.

The "additional evidence" which can be relied upon to establish a *prima facie* claim depends on the attendant facts and circumstances. *See Blair*, 505 F.3d at 529 (citing cases that "merely [offered] various context-dependent ways by which plaintiffs *may* establish a *prima facie* case, and [did] not [establish] rigid requirements that all plaintiffs with similar claims must meet regardless of context") (citing *McDonnell Douglas*, 411 U.S. at 802 n. 13). In this case, the suspicious timing of the termination of the purchasing agreement provides the evidentiary basis for inferring the Yateses acted with discriminatory motives.

The significance of timing is most apparent in our decisions pertaining to the "causal connection" element for Title VII retaliation claims, which similarly employ a *McDonnell Douglas* burden-shifting scheme. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). To establish a *prima facie* case of unlawful retaliation, the plaintiff must demonstrate, *inter alia*, a causal connection between the protected activity (like filing a complaint for unlawful discrimination) and the employer's

materially adverse action (such as termination).[10] *Id.* Causation is found where the plaintiff "proffer[s] evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

Causation can be proven indirectly through circumstantial evidence such as suspicious timing. *See Mickey*, 516 F.3d at 523, 525. Specifically, this Court has found that temporal proximity between an assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal connection element of a retaliation claim "[w]here an adverse employment action occurs *very close* in time after an employer learns of a protected activity." *Id.* at 525; *see also DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) ("[I]n certain distinct cases where temporal proximity between the protected activity and the adverse employment action is acutely near in time, [] close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."). Where the nexus is not "very close," we have declined to find a causal connection based on timing alone. *See Mickey,* 516 F.3d at 523; *Michael*, 496 F.3d at 596.

This Title VII retaliation analysis bears close resemblance to the *prima facie* inquiry required for racial discrimination claims analyzed under *McDonnell Douglas*. In both instances, the court is seeking to determine whether the circumstances create an inference that the defendant acted with impermissible motives. *See Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (noting that proximity may be "significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive"); *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001) (stating the "the very point of the prima facie case requirement" for a racial

---

[10]To prove a *prima facie* case of unlawful retaliation under Title VII, the plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took a materially adverse action against the plaintiff or subjected the plaintiff to severe and pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the materially adverse action. *Evans v. Prospect Airport Servs., Inc.*, 286 F. App'x 889, 894 (6th Cir. 2008).

discrimination claim evaluated under *McDonnell Douglas* framework is "to provide a basis for inferring the existence of a discriminatory motive.") Just as a reasonable juror may infer a plaintiff's undertaking of a protected activity was the likely reason for the defendant's adverse action when the temporal proximity is "very close" in retaliation cases, see *Mickey*, 516 F.3d at 523, so too could the juror infer discriminatory motives when the defendant refuses to consummate a purchase agreement for real property soon after discovering the racial identity of the prospective buyers.[11]

In this case, Brent accepted in writing the Lindsays' purchase offer for 2268 Eckert on May 13, 2005. ROA 1498, 1512. The Yateses cancelled the purchase agreement on May 24, 2005 – just two days after the Lindsays allege that Brent met Douglas Lindsay and discovered the prospective buyers were African-American. ROA 710, 1055, 1772.[12] Prior to this face-to-face meeting, the Yateses had not given any indication that they intended to back out of the deal. Rather, Brent had agreed to modifications in the agreement on May 18, 2005. ROA 1507. The two-day lapse alleged by the plaintiffs falls well within the range that constitutes "very close" temporal proximity. *See Mickey*, 516 F.3d at 525 (finding temporal proximity alone to be sufficient when the defendant fired the plaintiff on the same day in which it learned that the plaintiff had filed an EEOC complaint); *DiCarlo*, 358 F.3d at 421-22; (twenty-one day lapse between protected activity and adverse employer action fell within close temporal proximity); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding that temporal proximity of three months was "significant enough to constitute sufficient evidence of a causal connection" in satisfaction of a *prima facie*

---

[11]This is not the first time we have relied upon temporal proximity to recognize a *prima facie* case of discrimination. For example, in *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006), this Court reviewed the district court's denial on summary judgment of plaintiff's pregnancy discrimination claim due to her dismissal during a reduction-in-workforce. Employing the "familiar *McDonnell Douglas* burden-shifting framework to analyze Title VII pregnancy discrimination cases," we held that temporal proximity could demonstrate a "nexus" between the employer's learning of the plaintiff's pregnancy and her dismissal in satisfaction of the *prima facie* test. *Id.* at 593-94; *see also DeBoer v. Musahi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005) (finding "temporal proximity between DeBoer's announcement of her pregnancy, her filing for [Family Medical Leave Act] leave, and her demotion satisfies the 'nexus requirement'").

[12]While the Lindsays claim in their that brief the purchase agreement was terminated the day after Douglas Lindsay and Brent met, the record indicates both Douglas and Tina Lindsay believed that the termination actually occurred two days later. ROA 710, 1054, 1772.

case). Thus, we find that the very close temporal proximity between Brent and Douglas Lindsay's face-to-face meeting and the cancellation of the purchase agreement creates an inference of unlawful discrimination for the purposes of summary judgment.[13] In other words, it would permit a reasonable juror to find it more likely than not that racial animus motivated the Yateses' decision.

The Yateses contend that the termination of the purchase agreement on May 24, 2005, occurred several days after Douglas and Brent met, not just two days later as alleged by the Lindsays. As a result, they essentially argue the nexus of events is not as close as the Lindsays claim and is, therefore, inadequate to create an inference of discrimination. But even if the relevant time lapse was ten days, it would still fall within the very close temporal range, which a reasonable juror could consider suspicious. *See DiCarlo*, 358 F.3d at 421-22; (twenty-one day lapse between protected activity and adverse employer action was grounds for inferring an improper motive in Title VII retaliation context). Moreover, whether the alleged time line proffered by the Yateses is actually correct is not relevant at this stage of the proceedings. On summary judgment, we must accept the non-moving party's evidence as true. *See Muhammad*, 379 F.3d at 416. The Yateses' proposed time-line is simply beyond our purview in the instant appeal.

For these reasons, we conclude the Lindsays carried their *prima facie* burden on summary judgment and could establish an inference of discrimination based on the evidence. In doing so, we emphasize that this Court takes no position on the credibility of either side – as that is the province of the finder of fact. Our holding is limited to the recognition of a genuine issue of material fact concerning the *prima facie* case, as well as the issue of pretext as discussed *infra*, that renders judgment as a matter of law

---

[13]Although not nearly as significant as temporal proximity, the identity of the land owners surrounding 2268 Eckert also contributes to our inference of discrimination at the summary judgment stage. Specifically, the adjacent properties to the east and west, as well as the properties located to the rear of 2268 Eckert and directly across the street, were owned by either members of the Yates family or by a business owned and operated by Brent. ROA 1489, 1502-03. The fact that the Yateses lived and worked in the surrounding area renders it more likely that they would act against their financial interests to the extent they harbored racial animus.

unsuitable.  *See Canderm Pharmacal*, 862 F.2d at 601.  Accordingly, we find the district court erred in granting the Yateses' motion for summary judgment.

**B. Pretext**

The Yateses argue they are entitled to summary judgment, even if the Lindsays could create a genuine issue of material over the *prima facie* claim of housing discrimination, because the Lindsays have failed to offer evidence that the Yateses' articulated reason for terminating the purchase agreement was a pretext for discrimination.  We disagree.

As alluded to above, once the plaintiff presents evidence of a *prima facie* case of housing discrimination on summary judgment, the burden of production of evidence shifts to the defendant to "offer admissible evidence of a legitimate, non-discriminatory reason" for the housing decision made.  *See Blair*, 505 F.3d at 524; *Mencer*, 228 F.3d at 634.  "If the defendant does so," the burden shifts back to the plaintiff to "identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination."  *Id.*; *see Mencer*, 228 F.3d at 634.

The non-discriminatory reason proffered by the Yateses for cancelling the purchase agreement was that JoAnn wanted to keep the 2268 Eckert property "in the family" and that she was unaware it was on the market when the Lindsays contracted to buy it.  In support of this contention, the Yateses presented sworn testimony from JoAnn and Brent that JoAnn did not wish to sell the 2268 Eckert property – the residence in which her children were raised – and that the house was left on the market after the death of her husband as a result of a lack of communication between JoAnn and Brent.  *See* ROA 658, 1500, 1572, 1590.  We find this explanation is non-discriminatory and satisfies the Yateses' burden of production under *McDonnell Douglas*.  Accordingly, the "mandatory presumption of discrimination" created by the *prima facie* test "drops from the case."  *Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791, 802 (6th Cir. 2007)

The burden of production of evidence shifts back to the Lindsays to point to evidence that the Yateses' proffered justification is a pretext for unlawful discrimination.

*See Blair*, 505 F.3d at 524.  We have previously explained the applicable pretext analysis:

> Pretext can be established by (1) a direct evidentiary showing that a discriminatory reason more likely motivated the employer or by (2) an indirect evidentiary showing that the employer's explanation is not credible. However, mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. To avoid summary judgment, the plaintiff is required to produce evidence that the employer's proffered reasons were factually untrue. Despite the shifting burdens of production, the ultimate burden of persuasion remains at all times with the plaintiff.

*Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (citations and quotation marks omitted).

The Lindsays seek to prove pretext by showing the Yateses' explanation for cancelling the purchase agreement is not credible.  Although the Yateses claim the record does not include any evidence that could establish that the proffered reason for terminating the purchase agreement was factually untrue, the timing of the termination of the purchase agreement itself casts doubt on the veracity of the Yateses' explanation. *See Asmo* , 471 F.3d at 593 (while temporal proximity "cannot alone prove pretext . . . [it] can be used an [sic] 'indirect evidence' to support an employee's claim of pretext").  Moreover, notable inconsistencies in the record further raise suspicion as to the validity of the Yateses' non-discriminatory reason.  Specifically, Carol Eicher, the Yateses' realtor, testified that Brent explained to her that his mother's motivation for not selling the property was that "the closer we got to closing the more emotional [JoAnn] became."  ROA 1542; *see* ROA 1512 (Brent's affirmation of this statement to Eicher). A reasonable juror could infer from this testimony that JoAnn gradually arrived at a decision not to sell the home for sentimental reasons after learning of the agreement with the Lindsays.  But this notion is at odds with Brent's separate allegation that JoAnn instructed him to terminate the purchasing agreement as soon as she found out that he had contracted to sell the property.  ROA 1500.  The possibility that JoAnn was aware of the contract on the house for several days prior to cancelling the deal, with Brent and Douglas Lindsay's meeting occurring in the intervening period, undermines the Yateses'

fundamental allegation that JoAnn had already made up her mind not to sell the property before the Lindsays' offer and that she ordered Brent to cancel the deal when she first learned of it.

In addition, despite JoAnn's expressed desire to keep the home "in the family," she acknowledged that nobody in the family actually wanted the residence. ROA 1572. She also maintained that she was emotionally attached to the property. Yet she admitted that she had agreed, even if reluctantly, to list 2268 Eckert before her husband's death and that she never took the property off the market nor did she advise her realtor not to sell the property before the Lindsays contracted to buy the property. ROA 1570, 1573. These disconnects between motivation and conduct also cast doubt on the proffered explanation.

Finally, Brent claimed he first learned that his mother did not want to sell 2268 Eckert over the phone, three to five days after the purchase agreement was signed on May 13, 2005. ROA 1500. He stated that he informed Eicher of JoAnn's decision that same day over the phone. ROA 1505. But Eicher testified that Brent first notified her of JoAnn's decision in person at Brent's office, not over the phone. ROA 1542. Eicher also indicated that this meeting did not occur on May 18th but rather on May 24th – the date the agreement was cancelled. ROA 1542, 1554. A reasonable juror could find that the conflicts in the record over when and how Brent actually communicated the cancellation to Eicher provide a reason to disbelieve the Yateses' version of the events as they suggest a fabrication of the facts.

A discrimination case is submittable to a jury on the credibility of the defendants' explanation if the plaintiff offers evidence that could establish by a preponderance of the evidence that the proffered reasons had no basis in fact or did not actually motivate the adverse housing decision. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). We find the evidence discussed above could permit a fact-finder to reasonably conclude that the non-discriminatory explanation of seeking to keep the home "in the family" did not actually motivate the  cancellation of the purchasing

agreement. Therefore, a genuine issue of material fact exists as to whether the Yateses' proffered reason is a pretext for unlawful discrimination.

The Supreme Court has held that a *prima facie* case of discrimination combined with a showing that the proffered non-discriminatory reason is false is sufficient for a plaintiff to prevail on the ultimate issue of discrimination. *See  Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also Peters*, 285 F.3d at 474-75.[14] In other words, a plaintiff need not necessarily "introduce independent evidence of discrimination in addition to establishing the falsity of" the proffered motivation for the seller's action. *See Peters*, 285 F.3d at 470.  Because sufficient evidence in the record exists for the Lindsays to establish a genuine issue of material fact regarding each element of their *prima facie* case and to show the Yateses' stated reasons for rescinding the purchasing agreement could be found to amount to pretext, we conclude that the Lindsays can prevail on their housing discrimination claims.  Accordingly, we rule that the defendants are not entitled to summary judgment.

**V.**

For the foregoing reasons, we **REVERSE** the district court's decision to grant summary judgment in favor of defendants and **REMAND** for proceedings consistent with this opinion.

---

[14]The Supreme Court specifically stated in *Reeves*, 530 U.S. at 148:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive . . . .  In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose . . . .  Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision . . . .  Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.