**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2135
_____

OXFORD HOUSE, INC.,
a Delaware not for profit corporation,

Appellant

v.

TOWNSHIP OF NORTH BERGEN,
a New Jersey municipal corporation
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:21-cv-19260)
District Judge: Hon. Esther Salas
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 28, 2025

Before: KRAUSE, BIBAS, and MONTGOMERY-REEVES,
*Circuit Judges*

(Filed:  October 24, 2025)

Stephanie E. Farrell
Nehmad Davis & Goldstein
4030 Ocean Heights Avenue
Egg Harbor Township, NJ 08234

Steven G. Polin
3034 Tennyson Street NW
Washington, DC 20015
                    *Counsel for Appellant*

Drew D. Krause
Cheyne R. Scott
Chasan Lamparello Mallon & Cappuzzo
300 Lighting Way
Suite 200
Secaucus, NJ 07094
                    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

Drafting a complaint can be a challenging enterprise. Plaintiffs often believe that they have set out sufficient factual allegations to state a claim and commence their lawsuit, only for a court to tell them otherwise. For this reason, courts that dismiss a complaint typically set out their reasons for doing so and then grant leave for a plaintiff to amend and correct their missteps. Here, the First Amended Complaint filed by Oxford House failed to state a claim for discrimination, so the District

2

Court properly dismissed it. But it did so with prejudice, reasoning that its earlier denial of Oxford House's motion for a preliminary injunction and our own opinion affirming that order had previously provided Oxford House with notice of the deficiencies in its complaint, and—as Oxford House had not corrected those deficiencies in its First Amended Complaint— amendment would be futile. Seeing it differently, we will vacate and remand.

## I.      Factual and Procedural Background[1]

Appellant Oxford House, Inc. is a Delaware not-for-profit corporation that helps individuals recovering from alcoholism and/or substance abuse to find affordable and supportive living arrangements. J.A. 167. As part of this work, Oxford House arranges leases of single-family homes on behalf of groups of individuals in recovery so that they may live together and support one another. J.A. 167, 170. Once Oxford House secures the lease, the new residents take full responsibility for their living situation, including paying rent and utilities, maintaining the home, and communicating with their landlord. J.A. 170-72.

In February 2021, Oxford House signed a lease in North Bergen, New Jersey (the Property). J.A. 170. Before the new

---

[1] The following facts are taken from the First Amended Complaint and are accepted as true for purposes of deciding an appeal from an order granting a motion to dismiss. *See Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024).

residents could move in, however, a Township ordinance required that they first obtain a Certificate of Continuing Occupancy (CCO) from the Township's construction official. *See* North Bergen, N.J., Ordinance 460-92 § 3 (Oct. 15, 1992); J.A. 453. Issuance of a CCO is a ministerial act; once an application is submitted and the fee paid, the construction official "shall issue" a CCO unless the property is not up to code or its intended use is prohibited by the Township's zoning ordinance. *Id.* § 6.

Oxford House's realtor submitted an application for a CCO and sent an email to the Township's zoning officer with a document explaining the Oxford House model. J.A. 175. But the zoning officer denied the application, explaining by phone and email that Oxford House's intended use of the Property violated North Bergen's zoning ordinances. J.A. 175-76. When Oxford House asked the Township's attorney what specific zoning provision was violated, J.A. 176, she asserted that the Oxford House model constituted a "Community Residence" under New Jersey's Municipal Land Use Law, N.J. Stat. Ann. § 40:55D-66.1 (West 2017), and so could only operate in a single-family dwelling, whereas the Property was a two-family dwelling. J.A. 73, 176, 213-14. Oxford House emailed back to contest the Township's categorization of Oxford Houses as "Community Residences," but the Township did not respond. J.A. 177-78.

In October 2021, Oxford House filed this action, alleging that the Township intentionally misinterpreted the Municipal Land Use Law as a pretext and that it denied the

4

CCO application because of the Oxford House residents' status as recovering alcoholics and substance abusers. J.A. 39-41. It brought claims under the New Jersey Law Against Discrimination (NJLAD), the Americans with Disabilities Act (ADA), and the Fair Housing Act, as amended by the Fair Housing Amendments (FHA), J.A. 42-46, and it sought a preliminary injunction. J.A. 46. The Township filed an Answer to the complaint, raising several affirmative defenses, and it opposed the requested preliminary injunction. J.A. 115-28.

The District Court's first order of business was to resolve the preliminary injunction motion. After ordering limited discovery for purposes of that motion, the District Court denied preliminary injunctive relief in June 2022, finding that Oxford House failed to establish a likelihood of success on the merits. J.A. 147-60. Oxford House appealed that order, and in July 2023 we affirmed for essentially the same reasons. *See Oxford House, Inc. v. Twp. of N. Bergen*, 2023 WL 4837835, at *5-6 (3d Cir. July 28, 2023).

In most cases, the next step after the denial of a motion for a preliminary injunction would have been for the parties to proceed with discovery on the path to summary judgment or trial. Here, however, Oxford House decided on its own initiative to add a small number of new factual allegations and to remove the NJLAD claim, so in September 2023 it filed an amended complaint. J.A. 166. Although the First Amended Complaint did not otherwise make substantive changes to the content of Oxford House's asserted claims, J.A. 166-223, the

5

Township, which had filed an Answer to Oxford House's original complaint, responded to the Amended Complaint by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The District Court then granted that motion, holding that the First Amended Complaint failed to state a claim. J.A. 23. It also denied Oxford House's request for leave to file a second amended complaint, explaining that Oxford House had "already amended its complaint once, after both this Court and the Third Circuit found that its original [c]omplaint . . . was insufficient to demonstrate a likelihood of success on the merits of Plaintiff's claims" and that "[i]n so ruling, both this Court and the Third Circuit provided guidance as to what would be necessary for Plaintiff to sufficiently state a claim." J.A. 21-22. Because the First Amended Complaint was largely unchanged from its original complaint, the District Court reasoned that any future amendment would be futile. J.A. 21. Oxford House now appeals.

## II.    **Jurisdiction and Standard of Review**

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's decision to dismiss for failure to state a claim de novo, *see Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020), and its decision denying leave to amend a complaint for abuse of discretion, *see United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 193 (3d Cir. 2022).

## III.    Discussion

### A.    The Township's Post-Answer Motion to Dismiss

Before addressing the merits, we first pause to clarify a point of confusion regarding the filing of a post-answer motion to dismiss, like the Township's here. Some district courts around the country have declined to consider such motions on the ground that the filing of an answer categorically precludes a defendant from later challenging the sufficiency of a complaint. *See Power Probe Grp., Inc. v. Innova Elecs. Corp.*, 670 F. Supp. 3d 1143, 1146-47 (D. Nev. 2023) (collecting cases). We disagree.

True, motions raising certain defenses under Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). But the consequences for failing to raise such defenses depends on which provision of Rule 12(b) is later invoked. Filing an answer waives any unasserted defense under Rule 12(b)(2)-(5), *see id.* 12(h)(1). The Rule 12(b)(6) defense of failure to state a claim is different in that it may be raised "in any pleading allowed or ordered under Rule 7(a)," "by a motion under Rule 12(c)," or "at trial," *id.* 12(h)(2).

For this reason, other courts—like the District Court here—have correctly entertained such post-answer motions to dismiss under Rule 12(b)(6), in effect treating them as if they were motions for judgment on the pleadings, pursuant to Rule

12(c).  *See Internet Prods. LLC v. LLJ Enters., Inc.*, 2020 WL 6883430, at *3 (D.N.J. Nov. 24, 2020) (collecting cases). Doing so is straightforward and does not prejudice the rights of any party because the standard is the same under either rule. *See Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004) ("There is no material difference in the applicable legal standards . . . .").

Notably, we have adopted such an approach for situations where a defendant files successive Rule 12 motions, which, like an answer, would otherwise waive any unasserted defenses under Rule 12(b)(2)-(5).  *See Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321-22 (3d Cir. 2015). We now clarify that our reasoning in *Leyse* applies with equal force in the context of post-answer motions to dismiss for failure to state a claim.  We will therefore proceed to consider the Township's motion, construed as a motion under Rule 12(c).

## B.    The First Amended Complaint Fails to State a Claim

In reviewing *de novo* the District Court's dismissal of the First Amended Complaint for failure to state a claim, we accept as true all factual allegations in the complaint and ask whether, viewing those facts in the light most favorable to Oxford House, it is entitled to relief. *See Doe*, 961 F.3d at 208. But we disregard "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre,* 700 F.3d 675, 681 (3d Cir. 2012).  At the motion to dismiss stage, "[t]he issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The First Amended Complaint asserts claims under the FHA and ADA. The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap," or "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(1)-(2). This includes discriminatory actions taken by public entities, such as the Township, that have the effect of denying housing to otherwise qualified individuals with handicaps. *See Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005). The ADA, on the other hand, prohibits public entities from discriminating generally against any "qualified individual with a disability," including with respect to housing. 42 U.S.C. § 12132. Thus, to prevail on a discrimination claim under either the FHA or the ADA, Oxford House must ultimately prove two elements: (1) that the would-be residents have a "handicap" or a "disability" as those terms are statutorily defined; and (2) that the Township discriminated against them on the basis of such handicap or disability. Because the parties do not dispute that the prospective Oxford House residents are individuals with handicaps or disabilities under the FHA and

9

ADA, J.A. 12, this appeal concerns only the second element, discrimination on the basis of disability.

A plaintiff may prove such discrimination under the FHA or the ADA using one of three theories: (1) disparate treatment; (2) disparate impact; or (3) failure to make a reasonable accommodation. *See Wind Gap*, 421 F.3d at 176. The District Court analyzed the First Amended Complaint as advancing both disparate treatment and disparate impact theories of discrimination, J.A. 13, so we will review both rulings.

### 1.    *Disparate Treatment*

To establish disparate treatment, a plaintiff must demonstrate that "some discriminatory purpose was a motivating factor behind the challenged action." *Wind Gap*, 421 F.3d at 177 (citation and quotation marks omitted). At the pleading stage, this requires a plaintiff to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" of discriminatory intent. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quotation marks omitted). In evaluating whether the First Amended Complaint meets that standard—and, later, whether Oxford House was made aware of any deficiencies at the preliminary injunction stage—we bear in mind the difference between the pleading standard Oxford House must satisfy to allege discriminatory intent and the evidence it might use to prove that intent at trial. There is more than one way to prove discriminatory intent. The most straightforward is for a plaintiff to provide direct,

10

smoking-gun evidence in the form of a defendant's overtly discriminatory statements or use of express classifications. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Such direct evidence is rare, however, so most plaintiffs rely instead on circumstantial evidence, using the framework laid out in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). Under that framework, courts engage in "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," including the "historical background" and the "specific sequence of events" preceding the challenged decision, along with testimony and contemporary statements by decision-makers and whether normal procedures were followed. *Id.* at 266-69.

Alternatively, a plaintiff might employ the burden-shifting framework established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell-Douglas*, a plaintiff raises a rebuttable presumption of discrimination by establishing the elements of a *prima facie* case; that presumption shifts the burden to the defendant to show that it had a legitimate, non-discriminatory reason for the challenged action; and, if the defendant makes that showing, the burden shifts back to the plaintiff to prove the defendant's stated reason was pretextual. *See Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017).

At the first step, the specific elements of a *prima facie* case vary based on the nature of the discrimination alleged and the factual circumstances. *See Texas Dep't of Comm. Affs. v.*

*Burdine*, 450 U.S. 248, 254 n.6 (1981). For example, in an FHA case alleging a refusal to rent, a *prima facie* case might require showing that a dwelling remained available after being denied to a qualified applicant who is a member of a protected class, *see, e.g.*, *Lindsay v. Yates*, 578 F.3d 407, 415-18 (6th Cir. 2009), while in an FHA case alleging a denial of municipal services, the elements might instead require showing that a municipality denied services to a member of a protected class but approved an application for such services from a similarly situated party not of the plaintiff's protected class, *see, e.g.*, *Cooke v. Town of Colo. City*, 934 F. Supp. 2d 1097, 1113-14 (D. Ariz. 2013).

As these examples illustrate, the elements of a *prima facie* case are not set in stone, nor are they strictly necessary to prove discriminatory intent; rather, they create an inference of discrimination "because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Const. Corp. v. Water*, 438 U.S. 567, 577 (1978). A plaintiff can create that same inference by pointing to other evidence that, while not neatly fitting the elements of a particular formulation of a *prime facie* case, is nonetheless sufficient to allow a jury to conclude that unlawful discrimination has occurred. *See, e.g.*, *Lindsay*, 578 F.3d at 416; *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008).

Which of these alternative methods a plaintiff pursues at trial will depend on the evidence produced during discovery. *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097

(3d Cir. 1995). For this reason, we do not require plaintiffs at the pleading stage to identify the specific method of proof on which they will rely; doing so before discovery has commenced would "put the cart before the horse." *Connelly*, 809 F.3d at 788. In practice, this means that a plaintiff's complaint need not commit her to producing direct evidence of discriminatory intent or the kind of historical and procedural evidence necessary to prevail under the *Arlington Heights* framework. Similarly, "a complaint need not establish a *prima facie* case in order to survive a motion to dismiss," and courts do not evaluate the sufficiency of a complaint by undertaking "a point-by-point consideration of the elements of a *prima facie* case." *Id.* Instead, a complaint need only set out factual allegations which, when taken as true, "state a plausible ground for relief," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009), and support "a reasonable expectation that discovery will reveal evidence" of unlawful discrimination, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

As the District Court recognized in its decision, however, even with this low threshold the First Amended Complaint fails to state a claim of disparate treatment because it does not support a plausible inference that the Township's denial of a CCO was motivated by a discriminatory purpose. Despite conclusory allegations of discriminatory animus, J.A. 179, the factual allegations are insufficient in four respects.

First, Oxford House alleges that the CCO was denied because the Township "intentional misapplied" its zoning ordinances. J.A. 179. Per the First Amended Complaint, the

13

zoning officer told Oxford House that he denied the CCO because the intended use violated the zoning ordinances, and the Township's attorney later said the specific reason for the denial was that the Oxford House model qualified as a "Community Residence" under the Municipal Land Use Law and so was prohibited from operating in a two-family dwelling. J.A. 175-76. According to Oxford House, this was legally incorrect because the Oxford House model does not fit the statutory definition of a "Community Residence." J.A. 177. But even if we accepted Oxford House's interpretation of the statute, the mere misapplication of a law does not itself support an inference of discriminatory intent. There are many reasons why the Township may have interpreted the statute differently, and the First Amended Complaint does not offer any facts to support the inference that the Township's alleged misapplication of the law was intentional—that is, motivated by discriminatory animus, as opposed to innocent error. Simply put, Oxford House does not offer any facts that support its otherwise conclusory statement that the Township's misapplication of the statue was intentional.

Second, the First Amended Complaint's allegations include that there are no other Oxford Houses, sober living facilities, or rooming and boarding houses in the Township. Oxford House does not explicitly argue that this allegation indicates discriminatory intent, J.A. 174, but we consider that interpretation as part of our review. In any case, there are no allegations that there have been other applications for such housing or that the Township has taken any action to prevent

14

or refuse such housing. Standing alone, the absence of similar housing does not support an inference of discriminatory intent.

Third, the First Amended Complaint alleges that the zoning officer departed from the Township's ordinances, which required him to "notify[] the applicant in writing specifying the reason" for the denial of a CCO. North Bergen, N.J. Ordinance 460-92 § 6(f), J.A. 175. Instead, the zoning officer allegedly conveyed the reason—that the proposed use of the property would have violated the Township's zoning ordinances—by phone and directed Oxford House to the Township's attorney who then provided a written reason for the denial. J.A. 175-76. But while "[d]epartures from the normal procedural sequence also might afford evidence that improper purposes are playing a role" in a decision, *Arlington Heights*, 429 U.S. at 267, a complaint must do more than simply identify a procedural deviation; it must also allege facts suggesting that the deviation occurred because of discriminatory intent or that it was taken in order to facilitate or cover up a discriminatory purpose. *See, e.g.*, *Rollerson v. Brazos River Harbor Navigation Dist.*, 6 F.4th 633, 640 (5th Cir. 2021); *Fowler v. Sitt*, 104 F.4th 770, 788 (10th Cir. 2024), *cert. granted and vacated*, 2025 WL 1787695 (remanding to reconsider in light of *United States v. Skrmetti*, 145 S. Ct. 1816 (2025)). Here, however, the factual allegations do not suggest that the zoning officer's failure to provide written reasons for the CCO denial was motivated by discriminatory animus, that this minor departure from usual practices furthered any discriminatory goal, or that the written explanation coming from the Township's attorney rather than the zoning officer somehow

15

facilitated unlawful discrimination. The zoning officer had already informed Oxford House over the phone that the CCO was denied because the proposed use of the property violated the Township's zoning ordinances.

Fourth, the First Amended Complaint alleges that the zoning officer "admitted" that he did not deny the CCO application "on the basis that Oxford Houses are 'community residences,'" J.A. 177, presumably implying that the attorney's subsequent "community residence" rationale was a pretext for unlawful discrimination, Op. Br. at 33. But the complaint does not allege the zoning officer's actual reasons for denying the application, nor does it allege facts supporting the inference that he was motivated by discriminatory animus. Absent other indicia of discrimination, the mere fact that the two officials offered different reasons for the denial does not support an inference of pretext.

In sum, we agree with the District Court's thorough and thoughtful opinion concluding that the First Amended Complaint does not sufficiently allege facts that suggest the Township's actions were motivated by discriminatory intent.

2.    *Disparate Impact*

Unlike disparate treatment claims, which challenge intentional discrimination, disparate impact claims redress policies that are "fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). To prevail on a disparate impact claim at trial, a plaintiff must

16

identify a specific, facially neutral policy and then show the policy produces discriminatory effects, commonly proven through evidence of significant "statistical disparities" on the basis of a protected characteristic. *Watson v. Ft. Wor. Bank and Trust*, 487 U.S. 977, 987 (1988); *see also Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017).

Thus, at the pleading stage for such a claim, the complaint must first allege that a specific practice or policy has a discriminatory effect on a protected class, as opposed to a generalized policy, *Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 100 (2008), or a "one-time decision," *Tex. Dep't of Hous. and Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 543 (2015), and it must do more than simply allege the existence of a statistically significant impact on the protected class, *Stouffer v. Union R.R. Co.*, 85 F.4th 139, 146 (3d Cir. 2023). Rather, the complaint must provide data "plausibly suggest[ing] that the challenged [policy or] practice *actually* has a disparate impact." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 210 (2d Cir. 2020). That data need not be a perfect methodological fit, *see Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 651 (1989) (citing *N.Y.C. Trans. Auth. v. Beazer*, 440 U.S. 568, 585 (1979)), so long as it plausibly suggests an actual statistical disparity for members of the protected class and raises a reasonable expectation that discovery will reveal methodologically sound statistical evidence at trial, *see Mandala*, 975 F.3d at 210.

In this case, the Township argued before the District Court that the First Amended Complaint pleaded no facts,

17

statistical or otherwise, in support of a disparate impact claim. J.A. 248-49.  Oxford House did not respond to these arguments in its opposition, leading the District Court to deem any argument on this point forfeited.[2]   J.A. 20, 361-64.  Thus, Oxford House's arguments as to disparate impact, raised for the first time on appeal, have not been properly preserved, and we do not reach their merits.  *See Confer v. Custom Eng'g Co.*, 952 F.2d 41, 44 (3d Cir. 1991).

## C. The District Court's Denial of Leave to Amend.

Although we agree with the District Court's dismissal of the First Amended Complaint, we conclude that dismissal should have been without prejudice to the filing of a second amended complaint.

The District Court believed that any amendment would be futile for two reasons.  First, the District Court stated:

---

[2] While the District Court deemed any opposition by Oxford House to be "waived," J.A. 20, we view waiver as the "intentional relinquishment or abandonment of a known right," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), whereas forfeiture refers to a failure to timely make an argument or assert a right, *see United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023).  We therefore consider Oxford House's failure to respond to the Township's disparate impact argument to be an example of forfeiture.

[Oxford House] has already amended its complaint once, after both this Court and the Third Circuit found that its original Complaint, in combination with information unearthed in discovery, was insufficient to demonstrate a likelihood of success on the merits of [Oxford House]'s claims. In so ruling, both this Court and the Third Circuit provided guidance as to what would be necessary for [Oxford House] to sufficiently state a claim.

J.A. 21-22. It is true that those rulings concluded that Oxford House's motion for a preliminary injunction did not demonstrate a likelihood of success on the merits. But they both did so based on the evidence uncovered during expedited discovery on the preliminary-injunction motion, along with the other preliminary-injunction criteria. *See Oxford House, Inc. v. Twp. of N. Bergen*, 2022 WL 2341630, at *5 (D.N.J. June 29, 2022) ("Plaintiff has not adduced sufficient evidence to show that the prospective residents' status as handicapped played any role in Defendant's denial of the [CCO]."); *Oxford House*, 2023 WL 4837835, at *5 ("[W]hat Oxford House needs at this stage is clear evidence supporting the conclusion that it is reasonably likely to succeed on the merits.").

In other words, these rulings turned on the sufficiency of Oxford House's evidence in support of its preliminary-injunction motion, not the sufficiency of its original complaint. And as explained *supra*, "standards of pleading are not the same as standards of proof." *Fowler*, 578 F.3d at 214 (citing

19

*Phillips v. County of Allegheny*, 515 F.3d 224, 246 (3d Cir. 2008)). Because those standards differ, the denial of a preliminary injunction does not necessarily provide "guidance as to what would be necessary for [Oxford House] to sufficiently state a claim." J.A. 21-22. And here, we are not convinced those earlier opinions alerted Oxford House to the deficiencies in its complaint that we have identified today. After all, a preliminary injunction is extraordinary relief that is granted in only limited circumstances. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994). Put another way, most cases that are able to survive a motion to dismiss will not be able to satisfy the preliminary judgment standard. So the fact that Oxford House's preliminary injunction was denied did not necessarily speak to the sufficiency of its pleading. Rather, Oxford House was put on notice of the deficiencies in both its original and First Amended Complaints for the first time by the District Court's grant of the motion to dismiss. Thus, amendment would not be futile on this ground.

Second, the District Court stated that Oxford House "attached a proposed second amended complaint" to its supplemental briefing and that, upon reviewing it, the Court "[did] not find anything in the proposal that indicate[d] that [Oxford House] will be able to fix the deficiencies described in [the District Court's] Opinion." J.A. 22. It appears, however, that the document attached to Oxford House's supplemental briefing was not a proposed second amended complaint, but a redline of the *First* Amended Complaint showing the changes

20

from the original complaint. J.A. 409-29. So this did not indicate that amendment would be futile.

Because the District Court denied Oxford House leave to file a second amended complaint based on its determination that doing so would be futile, it did not have a chance to consider whether Oxford House had demonstrated "good cause" under Federal Rules of Civil Procedure 16(b)(4) to seek leave to file a second amended complaint after the deadline for doing so had passed. J.A. 22. *See Premier Comput. Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). Nor did it have a chance to address whether it should have granted leave to amend *sua sponte*. *See LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022). We are mindful that Oxford House's request for leave to amend was in response to the Township's motion to dismiss, which itself was not filed until after the Court's deadline for filing an amended complaint had passed, J.A. 165, 343, and that courts in civil rights cases "must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). But because the District Judge here has not had the opportunity to consider these questions and we have every confidence in our esteemed colleague, we will remand for the District Court to address them in the first instance.

**IV.** **<u>Conclusion</u>**

For the foregoing reasons, we will affirm the District Court's dismissal of the First Amended Complaint, vacate its order denying leave to amend, and remand for further proceedings consistent with this opinion.